L. B. Skinner et al., Appellants, vs. W. B. Henderson et al., County Commissioners of Hillsborough County, Appellees.

26 121
36 217
26 121
e44 638

26 121
52 212

1. Under the Constitution and laws of this State a county cannot impose taxes except for county purposes, and the building of a bridge in a county within the corporate limits of a municipality in which the county outside of those limits is in no wise interested, the same being for the sole benefit and advantage of the municipality, is not a county purpose.

2. Where an injunction is sought against a county to prevent the appropriation of its revenue to aid in the building of a bridge in a city, and the allegations of the bill are that the bridge is on a city street, and not a county road or highway, and that the county outside of the city is no wise interested in it, and that it is for the sole benefit and advantage of the city, it was error to sustain a demurrer to the bill.

3. But the statute authorizing the city to build bridges within its limits, does not necessarily revoke the authority given to the county by general statute, without restriction as to locality, to build a bridge within those limits. As there may be bridges serving only a city purpose, so there may be others demanded in the same territory for county purposes; and where the circumstances create this demand, and the bridge is for the use and benefit of the people of the county at large, or of some considerable portion of them, and intended and needed as well for those outside as for those inside the city, the authority of the county to build it is not annulled by the local city statute.

4. The circumstances of each case must determine the line of authority, even where there is assent of the municipal government; but in case of conflict between municipal and county officials, it would seem that the county should give way, in deference to the general policy against one jurisdiction clashing with another.

5. If a county may build a bridge within the limits of a municipality when the circumstances suit, it may also aid the municipality in building one under like circumstances, even though it is to be constructed under a contract with the municipality, and is to be under its control.

Appeal from the Circuit Court for Hillsborough County.

The facts' of the case are stated in the opinion.

*William Hunter*, for Appellants.

*Sparkman & Sparkman*, for Appellees.

MAXWELL, J.: The City of Tampa, in Hillsborough county, made a contract with a certain bridge company for the construction of a bridge within the coporate limits of the city across Hillsborough river. The cost of construction was to be $13,800. Upon petition to the County Commissioners of the county by the citizens of Tampa and application in behalf of the city by the president of its Council, said Commissioners ordered an appropriation of $4,600 towards the

construction of the bridge, to be paid by the county, this amount being one-third of the contract price for its construction, and contributed on the understanding that it should be a free bridge. Thereupon appellants filed a bill against the County Commissioners (appellees), praying that they be enjoined from paying out said amount for the construction of the bridge. Besides the foregoing facts stated in the bill, it alleges, among other things immaterial here, that complainants are citizens and tax-payers of the County of Hillsborough; that the Commissioners levied a tax for the year 1887 for general revenue purposes which will produce a large surplus, and that they did this for the purpose and with the intent of assisting the City of Tampa "to build a bridge across Hillsborough river on Lafayette street, which is a city street, and not a county road or highway," and said bridge "is to be entirely and exclusively under the jurisdiction and control" of said city. That the county " outside of said City of Tampa is in no wise interested in the building of said bridge, and that the same is for the sole benefit and advantage of said city." That the county " receives no consideration for said appropriation. That "said bridge being wholly within the corporate limits of said city, * is entirely a municipal improvement, and the expense thereof should be defrayed entirely by said city; that the revenues collected from your orators by county taxation are not levied for the purpose of making such improvements in * * Tampa, or any other municipality, and cannot be legally expended for such purposes, as the building of said bridge in said city is not a ' county purpose ' within the meaning of the Constitution."

The defendants demurred to the bill for want of equity, and the demurrer was in effect sustained, though the ruling and order thereon were irregular—the order being, " that

the injunction being denied and the bill dismissed." Then appellants entered an appeal, but no point has been made here on this irregularity.

It is contended by appellant that the money proposed to be expended by the Commissioners to aid in the building of the bridge is not for a "county purpose," and that they have no authority to appropriate money raised by taxation for the county to any other purpose. As to their authority this is clearly correct. The Constitution (Section 5, Article IX) provides that the "Legislature shall authorize the several counties and incorporate cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes." What is a county purpose, as distinguished from a municipal purpose, is a question arising here from the fact that the City of Tampa is a part of the County of Hillsborough, and from the further fact that the county is authorized by statute to build bridges in the county without restriction as to locality, and that the city is authorized by its charter to build bridges within its corporate limits—both having authority for the same purpose there, if that given to the city does not exclude its territory from the domain within the jurisdiction of the county for such purpose. Confining ourselves to the allegations of the bill, it appears that the building of the bridge is wholly matter belonging to the City of Tampa. The contract for building was its contract. The highway on opposite sides of the river, to be connected by the bridge, is alleged to be a city street, and not a county highway, and it is further alleged that the county outside of the city is in no wise interested in the building of the bridge, and that the bridge is for the sole benefit and advantage of the city, being wholly within its corporate limits, and entirely a municipal improvement. These facts, taken as true under the

demurrer, show that the expenditure on the bridge would be for a city, and not a county "purpose." They do not present the question, whether the county can build, or aid in building, a bridge in the city under any circumstances; or, in other words, whether the jurisdiction of the city entirely excludes the county from its territory for such work. If the Constitution will permit requirements of the county in its highways and in the interest and convenience of all its citizens to affect this question, so as to allow concurrent authority where the work will serve both a county and city purpose, that cannot determine the case here in its present shape. As there may be bridges in a city altogether for local convenience, for aught that appears before us the one in question may be of that class. The bill avers that it is. We know judicially that Tampa is the county seat of Hillsborough, and that outside of Tampa there is habitable territory on both sides of Hillsborough river; but these relations of the county to the city do not of themselves authorize the former to enter the latter for any work that answers only a city purpose, such as the bill alleges of this bridge. If allowed to enter at all, it must be for work that answers a county purpose—that is, work for the use and benefit of the people of the county at large, or of some considerable portion of them, and intended and needed as well for those outside as for those inside the city. The bill does not show that the bridge is a work of this kind, but on the contrary shows only such facts as bespeak a work for merely city use and benefit. We think the County Commissioners are not authorized to aid in such a work, and that their demurrer to the bill should have been overruled.

While this conclusion decides the case upon the present record, we find in the argument of appellant's counsel, and in that of counsel for appellees, a full discussion of the ques-

tion, whether the legislative grant of authority to the City
of Tampa to build bridges within its corporate limits does
not intercept the general authority for that purpose given
to the county, so far as the territory of the city is concerned
—the counsel for appellants insisting that it does, and the
counsel for appellees that it does not. Anticipating that in
the further progress of the case below, this question may
be more pertinently presented, our views on it now will not
be out of place.

The theory of appellants is that the officials empowered
to act in the management of county affairs have no author-
ity to expend money they raise by taxation for county pur-
poses in building bridges within the corporate limits of any
municipality in the county. Whether they have or not is
the question to be solved. It is admitted for appellants that
if the county has the right to build the bridge, it would
likewise have right to appropriate for a part of the expense,
but insisted that if it could not pay in whole, it could not
pay in part. Then, the problem is, can the county officials
under their general authority, and notwithstanding the spe-
cial authority of the city, go into the city to build a bridge,
or to act in conjunction with the city for that purpose. The
rulings on this question are diverse, but they all agree that
it depends on constitutional provision or legislative enact-
ment applicable in the particular case, with general principles
of law to interpret or construe these. We have mentioned
all there is in the Constitution and laws of this State on the
subject. Counties cannot expend money except for county
purposes; and where a county and municipality cover the
same ground, there is nothing which expressly directs what
each may do respectively in the line of its authority. The
nearest approach to any decision on the question in this
State is in the case of State ex rel. vs. Commissioners of

Putnam County, 23 Fla., 632, where it was held that the establishment of a municipality on territory over which passes part of a public road established by the road authorities of the county, does not of itself abolish the road as a public highway, nor revoke or suspend the powers and duties of those authorities in regard to it. The Court was careful to go no further. But in this decision it appears that a county may, under some circumstances, have powers and duties touching highways in a city or town, for the proper exercise and enforcement of which it can be held responsible, and the name would be true of a bridge similarly situated.

There may be distinctively municipal purposes in respect to bridges within a corporation, as where a small stream, purely local, and having no connection with county highways, should be bridged for the convenience of citizens of the corporation; and it is conceivable that there may also be county purposes in the same respect therein, as where the bridge connects public highways of the county, and is of use and importance to the citizens of the county, irrespective of residence in the corporation, and especially if the court house of the county is in the corporation. It would seem but just and reasonable in such case that the county should take or share the burden of furnishing to the public the convenience of the bridge. In this connection it is worthy of observation that all the tax-payers of the county, those in municipalities not excepted, are required to contribute to the revenue of the county for bridge purposes, without reference to residence. If residing in a municipality they must pay a bridge tax for any and every locality inside or outside thereof, if in the county; while if not residing in a municipality, if appellants' view is correct, they cannot be taxed for a bridge therein, though for a county

purpose. It should not be assumed, and in the absence of assumption there is no reason to hold, that such inequality of tax burden was intended to be imposed. This involves relieving the county from the burden when a county purpose is to be subserved in a municipality, but holding the municipality liable for both county and municipal burden, whether in or out of the coporate limits. The palpable injustice of this is most striking. It is nothing more or less than imposing a double burden upon municipal citizens, one of which is a burden for a county purpose within the municipality, and exempting other citizens of the county from any burden for such purpose, although interested in common in the object to be attained.

We hence conclude that the special authority given to any municipality to build bridges within its limits, does not necessarily supersede the general authority given to the county. But as there may be a municipal purpose in which the county has no concern, and a county purpose in which all are alike, though perhaps not equally, interested, the circumstances of each case must determine the question of authority. And it seems to us that this would be so even where there is assent of the municipal government. Whether that authority should be exercised in the event of conflict between the two bodies, is not involved in this case, as the city and county are in accord in the building of the bridge. In cases where such conflict would arise, we are inclined to the opinion that the county should give way, in deference to the general policy against one jurisdiction clashing with another.

As we have said, the authorities differ on the main question under discussion. But much of this difference grows out of the difference in statutes that govern. We will not undertake a review of the cases, but content ourselves with

citing those which sustain the views we have expressed. In Ohio it is held that if there is nothing in the act incorporating a town which limits the power of the County Commissioners to establish a county road through or within its corporate limits, that power still exists. Wells vs. McLaughlin et al., 17 O., 99; Butman, et al. vs. Tawler, Ibid, 101. In Connecticut (City of Norwich vs. Story et al., 25 Conn., 44), it is held that the charter of a city conferring power on its common council to lay out new highways, etc., did not divest the County Court of the jurisdiction given by statute for the same purpose. A similar ruling in Iowa is valuable as coming from Judge Dillon, one of the most eminent of American jurists and law authors now living, and valuable also as having been announced in an opinion which fully discusses the subject. Bell vs. Foutch et al., 21 Ia., 119. See also Barrett vs. Brooks, Ibid, 144. There is this difference, however, between our statutes and the statutes of Iowa—that while the authority to the counties to build bridges is the same, our statute gives authority to the City of Tampa to establish and regulate bridges within its limits, while that in Iowa (general act) gives to cities and towns "care, supervision and control of all public * bridges * * within the city, and shall cause the same to be kept open and in repair," etc. But the reasoning on which it is held that the counties are not divested of authority to build bridges in cities is equally applicable to both, with proper modification, giving due weight here to the authority of counties to act for "county purposes." We think the doctrine of these cases is to be preferred under the system established by our Constitution and statutes.

The cases cited for appellants, and maintaining the position that county revenues cannot be expended under a contract to which the county is not a party, do not seem to us

to have the force attributed to them here. Holten et al., vs. Hanchett et al., 13 Ill., 615, simply decides that where legislative authority is given to an individual to build a toll bridge, the county officials cannot appropriate county funds to aid in its construction, because no law of the State authorizes such appropriation. If the view on which we rest our opinion, that in this State a county may build a bridge in a municipality to meet a county purpose, is correct, there is law here to authorize county appropriation of money therefor, and the authority is none the less existent because the appropriation is in aid of a municipal contract to build the bridge, if a county purpose is thereby advanced. Why should not a county expend money to aid in building a bridge, when it has authority to pay the whole expense of building it? If there is anything in the Holton-Hanchett case that seems to make a distinction, it goes beyond the controversy there, for it was a case where the authority to build the bridge was not in the county officials, and of course, therefore, they could not aid therein. The other case (The Attorney-General vs. Board of Supervisors of Bay City, 34 Mich., 43), was one where County Supervisors undertook to appropriate money for township roads, leaving to the townships to say to what roads it should be applied. It was held that this could not be done, partly because the county board had no occasion to raise money for other than its own roads, and partly because there was no definition of purposes, as the expenditure was to be under the direction of the town officer. As to the first ground, that is fully met in this case, if the bridge answers a county purpose, and as to the second, there is no indefiniteness of purpose to which the money is to be applied. But the Court says in the case that " taxes and loans when authorized to be raised by any public body, must be raised under the

implied condition that they are to be applied to the public uses under the control or care of that body. They cannot be raised for the purposes or uses of others, unless such a power is plainly given." It will be seen upon serutinizing the case, that this and other similar language of the opinion applied to the action of County Supervisors in respect to roads under the supervision of township supervisors, when by the statute their action was limited to "State and territorial roads."

The distinction between that case and the present is obvious. As in that it was held that county revenues could not be used for township roads, so in this we hold that county revenues cannot be used for city bridges as such, but in that the money was being applied to roads not "State and territorial," and not embraced within any authority of the County Supervisors, while in this, if the conditions suit, it will be applied to an authorized "county purpose." It does not seem reasonable that in all cases there is such necessary connection between the expenditure of money for public uses and the control ordinarily resulting from such expenditure, as to prevent the expenditure when made for a lawful purpose, because in accomplishing that purpose it is done in a way to relieve from the control that entails further liability.

It is no objection to our conclusion, as applicable to the case at bar, if it can be shown that the bridge answers a county purpose, as distinguished from a local city purpose, that the bridge was to be constructed under a contract with the city, and that the city will have control of the same, and must bear the responsibilities connected with it. This will be that much better for the county. So far as it is said to be objectionable on the ground that the appropriation by the county is towards the payment of a debt of the city, the

bridge being built under a contract with the city, that is met by the fact, if found to exist, that the appropriation is for a county purpose, and would be in effect a payment of its own obligation. And so far as it is said to be objectionable on the ground that the ownership and control of the bridge will be in the city, that is met by the admission, connected with our view as to the authority of the county to build the bridge itself if thereby serving a county purpose, that if "the county would have a right to build the bridge, it would likewise have a right to appropriate for a part of it." As to responsibility for proper care and repair of the bridge we express no opinion. But if the county discharges a duty in the attainment of a county purpose in such manner as to be relieved from further responsibility in the matter, this furnishes no reason against the validity if its action. We are to understand that in making the appropriation the Commissioners acted, not as aiding the city in a work with which they had no concern, but as performing a primary duty of their own under the power vested in them to build bridges in the county. The reservation they made that the bridge should be a free one, was to guard against restrictions in its use which would not be within the scope of their author· ity, and was a proper consideration for joining in the work.

Under our conclusion it will be for the defendants to determine upon existing facts of the situation whether they will further resist the injunction. The decree is reversed, with leave to them to answer, if they should deem it advisable.