COUNTY COMMISSIONERS OF DUVAL COUNTY, PLAINTIFFS IN ERROR, VS. CITY OF JACKSONVILLE, DEFENDANT IN ERROR.

1. Under section 5 of Article IX of the Constitution, the Legislature can not authorize counties to levy taxes for any other than county purposes; nor can counties be authorized to devote money so raised to any other than such purposes.

2. The authorities have formulated no generally accepted definition of a county purpose, but leave each case involving the question to be decided as it may arise.

3. The Legislature exercises plenary control over public highways, whether they be public county roads or streets in cities and towns.

4. If the courts entertain a well-founded or reasonable doubt as to the constitutionality of an act, it should, in deference to the legislative judgment, be upheld.

5. The proviso to section 17 of Chapter 4014, laws of 1891, directing that one half of the amount of the special road tax authorized by the act to be levied by the County Commissioners and realized from the taxable property in incorporated cities and towns, to be turned over to the municipal authorities, to be used in repairing, working, improving and laying out the streets thereof, as may be prescribed by the ordinances of the said cities and towns, is not in conflict with section 5, Article IX, of the Constitution, as being a diverson of county revenues to other than county purposes.

6. Neither is said proviso in conflict with section 16, Article III, of the Constitution, as not being expressed in the title of said Chapter 4014, laws of 1891.

7. When a matter is so closely connected with the subject of the act as to create a doubt whether it is not included within it, the

courts will not consider the question whether the legislative action upon it violates the constitutional prohibition relating to the titles of laws.

8. A street is a public road or way in a city, town or village. All streets are highways, but all highways are not necessarily streets.

9. It is not required that the title of an act should give a synopsis of all the means by which the object of a law is to be accomplished in the provisions in its body. The title may be general, and so long as the generality of the subject expressed therein is not employed as a guise to conceal the real object of the law, or some provision therein, it will not be objectionable.

10. The turning over of one-half of the money raised from the taxable property in incorporated cities and towns, under section 17, Chapter 4014, laws of 1891, does not destroy the equality or uniformity of the county assessment made by the County Commissioners.

11. By the seventeenth section of Chapter 4014 the public road tax when collected is required to be paid into the county treasury as a special fund to be expended under the direction of the County Commissioners solely for the purpose mentioned in the act; and under section 584 and 585, Rev. Stat., no money can be drawn from the county treasury except upon warrant drawn by order of the County Commissioners. Under the statutory provisions mentioned it is clearly the duty of the County Commissioners to turn over to municipalities their proportional part of the road tax when collected and paid into the county treasury, by issuing a warrant for the payment of the same.

12. Mandamus is a remedy resting in the judicial discretion of the court, and the peremptory writ will not ordinarily be awarded commanding an officer to do what is not within his power to do, and although he may have put it out of his power to perform his duty, and may be liable in damages therefor, still where he can not perform the act, and this is clear to the court, the peremptory writ will not ordinarily be issued against him.

Writ of Error to the Circuit Court for Duval county.

STATEMENT.

This is a proceeding by mandamus, instituted by the City of Jacksonville against the County Commissioners of Duval county, to require them to turn over to the municipal authorities of said city one-half of the amount realized from a special tax for public roads and bridges levied and collected on the property within the corporate limits of said city, under section 17, Chapter 4014, laws of 1891.

It is alleged in the alternative writ that the Board of County Commissioners of Duval county deemed it advissible and for the public good, and at the times for levying taxes for county purposes for the years 1891, 1892, 1893 and 1894, respectively, levied, by virtue of section 17, Chapter 4014 laws of Florida, a special tax for public roads and bridges on all the real and personal property in Duval county subject to taxation, and which was assessed and collected as other taxes of the county and paid into the county treasury as a special fund as required by the law. That a large amount of said special tax levied for the years mentioned, and collected and paid into the county treasury, amounting to more than $19,000, was assessed, levied and collected on property in the city of Jacksonville, exactly how much was so realized the city was not able to say, because of the fact that all books and papers containing such information were in the custody and control of the county officials of said county, but the city shows that there had been realized from such source for the years mentioned the sum of $18,-050.76, as appeared by a sworn abstract made from the tax collector's books by the tax collector, and attached as an exhibit. It is further averred that the exact amount realized from such special tax on the property

in the city of Jacksonville and required by the act mentioned to be turned over to her municipal authorities was, or should be known by the County Commissioners, and they could ascertain correctly from books and papers in their possession the exact amount so realized. That of the amount of money realized from said special tax on property in the city of Jacksonville, the sum of $2,709.05 was by warrant dated June 1st, 1892, turned over to the city by order of the Board of County Commissioners of said county, and no other of said moneys so realized had been turned over to said city as required by law. That the municipal authorities had caused the matter to be called to the attention of the said County Commissioners, and had demanded that the money due the city from the said taxes be turned over to the municipal authorities, and that the commissioners account to the city for one-half of the amount so realized from property in the city, but that they had refused to do so. It was also alleged that the city was in urgent need of the moneys so due, to be used in the repairing, working, improving and laying out the streets of the city, as prescribed by ordinances.

A motion was made to quash the alternative writ on the grounds, among others, that it was not the duty of respondents to turn over to relator any portion of the taxes collected for public roads and bridges. Relator's claim was an unliquidated demand. That it did not appear that respondents had ever been furnished with, or were in possession of, information as to the amount of alleged taxes collected for roads and bridges, so as to enable them to turn over any amount to relator. The writ was otherwise uncertain, evasive and insufficient. That section 17 of Chapter 4014 is in violation of section 5 of Article IX of the Constitution. That

200      SUPREME COURT.

County Comm'rs of Duval Co. v. City of Jacksonville.—Statement.

section 17 of Chapter 4044 is in violation of the Constitution. That the proviso to section 17 of Chapter 4014 was inoperative and void under the Constitution.

The motion was overruled, and respondents answered, admitting that the Board of County Commissioners for said county levied a tax for the years mentioned for public roads and bridges on the property of the county subject to taxation, under section 17 of Chapter 4014 laws of Florida, but it is denied that the statement in the alternative writ as to the amount of the taxes collected on the property within the city was correct, and the amount collected for the years 1891, 1892 and 1893 is stated to be $16,911.58, and deducting from this amount what had been paid left $5,746.74. Respondents had made every effort to get the amount collected for the year 1894, but had been unable to do so, on account of the usurpation of the office of tax collector by a party named, and the delay in paying taxes, and the confusion in reference to the same in consequence of the usurpation of said office. Respondents further aver that no demand was made upon them for any proportion of the taxes collected for public roads and bridges, except that at a meeting of the Board in January, 1895, the city recorder sent to the board a statement claiming the amount of the levy for roads and bridges on property within the city limits for the years 1891, 1892 and 1893, and requested payment of one-half of such sum to the city; that such statement failed to show the amount of such taxes collected, and was returned to the recorder for collector, and no demand except as stated having been made upon respondents, and the whole amount collected for roads and bridges being required for the purpose of keeping the roads and bridges of the county in good repair, especially by reason of the damage done to them by

JUNE TERM, 1895.            201

County Comm'rs of Duval Co. v. City of Jacksonville.—Argument.

the severe storms of 1893 and 1894, said funds were used by the county for that purpose, except $758.91 then in the hands of the treasurer to the credit of the road and bridge fund of the county.

As a plea to so much of the writ as involves the taxes for 1892, it is alleged that the claim was not presented to the Board of County Commissioners within one year from the time the same became due. It is also alleged that the provision for the payment of any portion of the tax collected for roads and bridges to the city is unconstitutional and void.

On motion of relator for peremptory writ, the same was awarded, and respondents commanded to turn over to the municipal authorities of the city of Jacksonville the sum of $5,746.74, being one-half of the amount admitted by the return to have been realized from the special tax for public roads and bridges, levied by virtue of section 17 of Chapter 4014 laws of Florida, on property in the city of Jacksonville, after deducting the sum of $2,709.05, the amount paid in June, 1892. Respondents were also commanded to render an account and pay over to the city authorities the balance of one-half the exact amount realized and paid into the county treasury of Duval county from said special tax for the years 1891, 1892, 1893 and 1894.

The errors assigned are the overruling the motion to quash, and in granting the peremptory writ.

*Fleming & Fleming*, for Plaintiff in Error.

*Walker & L'Engle*, for Defendant in Error.

Counsel for plaintiffs in error have relieved the discussion before this court a great deal by abandoning in their brief in terms the 1st, 5th and 6th grounds of

the motion to quash the writ in the court below, and the 4th and 7th of said grounds, and the plea of limitations set up in the answer by omitting argument of those matters.

After a most excellent statement of the history of the cause as it was tried below our adversaries produce a well considered argument in which, for the most part, they rely upon the questions of constitutional law involved, and which are raised by the 2nd, 8th, 9th and 10th grounds of the motion to quash. We will reverse in our treatment the order pursued by counsel for plaintiffs, and before proceeding to the really vital points—the constitutional questions—will dispose of the matters presented in causes numbered 2 and 3 in said motion and embraced by the first assignment of error.

1. Leaving out for the present anything of constitutional law there may be in number 2 of these causes, we will address ourselves to the other contention couched therein, namely: that even if the city is entitled to the money in dispute, "the statute does not state that it shall be turned over by the County Commissioners, and at least leaves the matter in doubt as to who shall turn it over." See bottom of page 8 and top of page 9 of their brief. To this statement of the meaning of the statute as read by counsel, they apply the doctrine which is quoted from Spelling on Extraordinary Relief, 2 vol., sec. 1370. Counsel unintentionally stopped short in their quotation. If the remaining words of the text from Spelling be added to the quotation, namely: "and of no one else," then the citation in foot note 1, of Brown vs. Duane, 14 N. Y. S. 450, becomes at once plain and pertinent to the text. The other case, People vs. Manhattan R'y. Co., 20 Abbott's New cases, 393, to which as to Brown vs.

Duane, we have not access, seems to sustain the proposition that where public works were erected in an uninhabited portion of a city by legislative sanction, mandamus would not be granted to remove them because the right was "not clear enough." With great caution in the absence of the report of that case, I think that according to the facts stated, it would have been easy for the court to say, instead of using the negative phrase quoted, that the writ was *prohibited* absolutely, there being no question of the validity of the legislation under which those "public works" were erected. However, Mr. Spelling is treating in sec. 1370 from which the quotation comes under the topic, "Nature, origin and causes" of mandamus, the special feature, that, the party who seeks this remedy must show a clear legal right to the writ; and in sec. 1441 same volume from which they again quote that the "relief is refused when the right is doubtful," he is considering and discussing mandamus to public officers. There are several cases cited to the text of this section 1441, none of which are in our reach except that in 39 N. J. L. 629. Reading the opinion we find a case arising under an act of legislation of such obnoxious provisions as in the language of the court "not to command itself to the favorable consideration of a court of justice," and finding that "grave doubts" existed upon the face of the cause of action presented by plaintiff, "and upon the construction of the statute authorizing it," refused the writ.

Now let us apply the law thus quoted and admitted to be sound, to this case. Remembering that the special point made here is, that, doubt arises as to whether the fund in controversy should be paid over by the County Commissioners to the city, and applying the test that we must by this statute show in terms or by

necessary implication a clear legal duty placed upon plaintiffs in error in this behalf, turning to the statute we find sec. 17 of Chap. 4014, after providing, that, under the emergency, and in the circumstances stated in its opening, the County Commissioners should "levy a special tax for public roads and bridges," etc., these words are used, referring to the tax collected under this levy, "and the moneys arising therefrom shall be paid into the county treasury, as a special.fund, *to be expended under the* "direction of the County Commissioners," etc. The italics are ours. We submit that as to this particular matter that is, as to who shall "turn over" the "one-half" of this fund as required by the *proviso*, nothing can be clearer than that it must be done by the County Commissioners. Suppose that instead of this contest it had been admitted that the money was due the city and must be "turned over," will any one for a moment doubt, that, upon a proper showing from the County Commissioners the County Treasurer would have paid over the amount either to the duly accredited. attorney or agent of that board who in pursuance of his authority from his principal would have paid it over upon proper receipts to· the treasurer of the city, or upon a duly drawn order or warrant of the said board presented to him by the latter officer that the County Treasurer would have hesitated, having the funds, to pay over the "one-half" required by the *proviso* to sec. 17, Chap. 4014? Certainly not. Why? Because no matter by what detail it was arrived at the money in question would have been "expended under the direction of the County Commissioners" and if "turned over" by their order in legal contemplation the language of the *proviso* would have been completely met and carried out. We respectfully submit that there can be no doubt about

JUNE TERM, 1895. 205

County Comm'rs of Duval Co. v. City of Jacksonville.—Argument.

who is to "turn over" this fund in the proper case. The language of the statute is plain.

2. The 3d ground of the motion to quash is that the claim is "an unliquidated demand," and it is contended, that, the allegations of the alternative writ show that the amount due the city is unliquidated and uncertain. We have not seen the cases cited, one from Georgia and another from Pennsylvania, and hence may have to change our views if they are in point and are convincing in the reasoning of the courts delivering the opinions in them, but conceding in the absence of those reports that they bear out the statements made by counsel, yet we say that in the light of our statute and looking to the allegations of the writ, there can be no trouble in seeing plainly, that, unless those allegations are indeed *very remarkable*, a case is presented wherein the claim insisted upon is emphatically a liquidated one, fixed and settled by the terms of the *proviso*, at "one-half of the amount realized from said special tax on property in incorporated cities or towns;" now if the writ—no matter how much surplusage may be there—if it contains clearly *these* essential averments, that, at the time, in each of the years named, when taxes for county purposes were levied in Duval county, the said County Commissioners deemed it advisable and for the public good and levied a special tax for public roads and bridges; that it was levied on all the real and personal property in the county subject to taxation; that said special tax was assessed and collected as other taxes of the county; and, that, the money arising therefrom was paid into the county treasury as said special fund, and that a part thereof was from taxes on city property, then no matter what other words may be in this writ, if the foregoing allegations appear there and are clear, the writ is safe

from the assault of presenting an unliquidated demand. We rest the question upon a reading of the writ. In this connection see State vs. Shearer, 45 N. W. 784, a Nebraska case.

Returning now to the questions of the constitutionality of the *proviso* to sec. 17, Chap. 4014, we beg to say that in our judgment they may be presented best in the shape of three interrogatories covering all there is in grounds 2, 8, 9 and 10 of the motion to quash. These we will state thus:

A. Does the *proviso* to section 17 of Chap. 4014, contain a subject foreign to that expressed in the title to that act? Article 3, sec. 16, Const. 1885.

B. Did the Legislature in and by said *proviso* to said sec. 17, "authorize the several counties to assess and impose taxes "for other than county purposes?" Art. 9, sec. 5, Const. 1885.

C. Would the execution of the *proviso* to said sec. 17, work irregularity and inequality in the rate of taxation as applied to the subject in hand? Art. 9, sec. 1, Const. 1885.

Plaintiffs in error answer all of these questions in the affirmative, and if they satisfy this court clearly that their views is correct as to any one of these points, then the *proviso* to sec. 17, Chap. 4014, must be erased from the act.

But, begging pardon for repeating stereotyped maxims, your honors will decline to exercise this delicate power, unless being necessary so to do in this case, you find that in addition to an unjust provision and the violation of what is called fundamental principle, and opposition to the spirit of the Constitution, if you find these unpleasant elements, we say still you will not blot out the *proviso* unless you shall upon fair discussion and careful consideration feel no doubt, but an

JUNE TERM, 1895. 207

County Comm'rs of Duval Co. v. City of Jacksonville.—Argument.

abiding conviction, that it is clearly repugnant to some *provision* of the Constitution of our State.

Cooly's Const. Lims., 6th ed. pp. 192, 196, 197-202, 204-206, 209.

In holding the affirmative of our proposition "A." plaintiffs' council cite: Carr vs. Thomas, 18 Fla. 736; State ex rel. Gonzales vs. Palmes, 23 Fla. 620; Cooley's Const. Lims., 5th ed. 170 to 181. Knoxville vs. Lewis, 12 Lea 180; Bugher vs. Prescott, 23 Fed. 20.

We have not seen the Tennessee case, 12 Lea 180, but get an insight somewhat into it from quotations in Bugher vs. Prescott, *supra.* It would seem that the hostility of the section of the Tennessee statute to their similar constitutional provision, which shocked the Supreme Court there into declaring the *entire* law void was because it "related to *municipal* revenues" to which there was no reference in the title. Counsel claims this as a strong case in their favor. Without being able to say *how* the sec. 50 of that Tennessee act *"related to municipal revenues,"* we pause to note this distinction between the title to that statute and our own Chap. 4014; the Tennessee act has a title relating to the *general* revenues of the State and county at large, in other words a *general revenue law:* to ours is a title referring to public roads and bridges of the counties; and that part of the law attacked is a *proviso* directing payment of part of a special tax to be raised by levy on all the property in the county to any city within said county out of the property of whose citizens that special funds has been realized. In the Tennessee case, for aught that appears, their sec. 50 may have been a provision which if put into effect would have clashed directly with the collection of city taxes—revenues—by city officers. Even then we fail to see the propriety or soundness of holding the entire

act unconstitutional. There must have been very few of the other provisions of their act which were independent of sec. 50, for we assume that the court there knew the law. In this case it can be very readily seen that in turning over one-half of the money raised by this special tax out of the property of residents of cities the Legislature had clearly in mind not only the mandate of the Constitution under consideration—Art. 3, sec. 16—and the title to Chap. 4014, but also that other command of Art. 9, sec. 1 of the Constitution. Let us see now if this is not so. The *subject* was "establishment and maintenance of public roads and bridges of the several counties." The provisions of the act are committing the whole matter to the County Commissioners and providing *inter alia* for raising a special fund in the case named in sec. 17, to enable them to discharge the duties imposed. In doing this —providing a sensible system for this matter of so much importance—the Legislature came face to face with *this* condition: There are cities embracing portions of the very land upon which this special levy is to be laid, and on the personal property also of whose citizens it is to be imposed, and as it did not seem right to take the money from the people in such cities and expend it wholly upon the public roads and bridges of the county outside of such city limits, they asked the question, how can this injustice be remedied in view of Art. 3, sec. 16, and Art. 9, sec. 1, under the title to this act? Carefully examining the first of these constitutional rules, and perceiving the subject expressed in the title to be as we have stated, legislators concluded that the matter contained in the *proviso* to sec. 17 was "properly connected" with that subject, because by turning over half of the amount as provided they were legislating directly in consonance with the purpose in

view. By so doing they aided those in authority in-
side of the city limits in discharging their duty of
maintaining and keeping in repair those sections of
the public roads of the counties lying within such cor-
porate limits.

"Streets are public highways under the control of
cities and towns, subject to the paramount authority
of the commonwealth." Southwark R. Co. vs. Phil-
adelphia, 47 Pa. St. 314; Branson vs. Philadelphia,
Ibid, 329, cited from 24 Am. & Eng. Encyc. of Law,
p. 2, in note 1. In short the Legislature recognizing,
that, as a street was none the less a public road of the
county for being inside the corporate limits of a city,
as a matter of *convenience* to the County Commission-
ers made a provision allowing them to delegate their
duty as to such parts of such public roads to those in
authority in the city and necessarily commanded the
turning over of a proper proportion of the special fund
in question to enable the city officers to discharge their
duty. Was the provision for keeping up such parts
of public roads as might be streets in a city germane
to, and properly connected with the subject of "estab-
lishing, etc.," the public roads of the counties? We
believe it is clear that such a provision is perfectly
germane to the subject of the title. And when the
Legislature determined that the part named in this
*proviso* should go to the city, they were forming a de-
liberate conclusion from a consideration of the com-
parative values of property in the corporate limits and
that in the country, as well also as subjects of valua-
tion for taxation, and appealing to experience and ob-
servation, in short handling all the factors that nat-
urally and necessarily entered into the calculation de-
cided and recorded their decision in the proviso in.

question and so fixed what they judged was a proper distribution to be made of that fund. Let us turn now again to the cases cited by counsel as bearing out their contention in respect of the clash between sec. 17 and Art. 3, sec. 16, Const. '85. We have said what we can in disposing of the cases in 23 Fed. Rep. and 12 Lea, which are the Tennessee cases referred to by counsel.

In the case in 23 Fla. page 620, it will be seen that the title to that act was of the special kind to use a comparative expression. There are two classes of titles, general and special. And so this court in that case said, "the subject expressed in the title of the special statute before us is not the general subject of stevedores, nor even that of stevedores' licenses." And the court goes on to show at this page, 630 of the opinion, that the title, "An act to fix the license tax of Stevedores," is so far from being general "specially restrictive." It followed that those provisions therein providing for ascertaining the qualifications of steve-dores for that calling being anything but germane to the subject indicated in that title were void, and so declared to be by the court. The title to the act con-sidered in Carr vs. Thomas, 18 Fla. 736, indicated noth-ing but legislation concerning the *"acknowledgment"* of conveyances. It contained a section regarding the *recording* of conveyances. The title is restrictive, that is *special*. What could be more foreign to the partic-ular subject of that title than a provision denouncing as void all deeds, etc., not *recorded* within six months? The court characterized the act as one which "in effect is promotive of fraud" and while declaring that the judges were "loath to pronounce any act of deliberate legislation to be invalid" yet announced their readi-ness so to do in case of such a statute "if there is ground" for it. We have now noticed all of the cases

cited upon this particular feature of the *proviso*, and we are perfectly willing for the court to take the law from those illustrations and the doctrine taught by Mr. Cooley, also quoted against us and apply it to our case. In the decisions cited, except the Tennessee case, the titles to the acts are special and restrictive. In the latter the title was general, the offending section foreign and special.

The case before your honors presents an instance of an act with a special title but one which is not restrictive, in the sense which would render the *proviso* to sec. 17, foreign matter. The acts adjudicated in Carr vs. Thomas, and the Gonzales case have titles both special and restrictive.

We submit that the *proviso* to sec. 17, Chap. 4014, does not violate Art. 3, sec. 16, of our Constitution, and upon this question commend the Texas case of— Fahey vs. The State, 11 So. W. Rep. 108, 23 Am. & Eng. Encyc. of Law, 229-275; Schehr vs. Detroit, 45 Mich. 626.

Under our question "B" this court is required to conclude that by the proviso discussed, the Legislature authorized the counties to "assess and impose taxes" for other than county purposes in order to sustain the plaintiffs' appeal. We beg pardon of our learned adversary for so doing, and respectfully dispose of this contention by submitting that the authority to levy— *i. e.*, to "assess and impose" the tax in question is contained in the sec. 17—the *proviso* being a direction of what shall be done with the proceeds of tax collections after they are relalized, can not possibly be construed into authority to make an assessment and imposition of taxes. We think this is plain, and because we can not after diligent study make out that this *proviso* authorized the county to "assess and im-

212 SUPREME COURT.

County Comm'rs of Duval Co. v. City of Jacksonville.—Argument.

pose" any tax, but see in it only a mandate directing the disposition of taxes after they have been collected, we refrain respectfully from discussing the cases cited in 26th and 29th Florida, 34th Michigan, and 51st Illinois, in support of this contention of counsel for the plaintiffs.

Letter "C" of our statement of the propositions of constitutional law, relates to the position that the offending *proviso* to sec. 17, would work inequally and lack of uniformity in the rate of taxation. We have read over time and again the argument of counsel on this point to the effect that property owners outside of cities under the *proviso* in operation would contribute twice as much for county roads and bridges as property owners within such corporate limits, but fail to catch that conclusion. We can easily imagine one instance which would show the contrary to be so: Suppose that $3,000.00 is the whole amount realized from this tax, and that by reason of the greater value of city property $2,000.00 of this sum has been realized from owners in the city; $1,000.00 has been paid by the countrymen, and under the law an equal amount is taken from the residents of the city owning property there, and the result is that each of these classes has paid exactly the same amount for use on country roads, while in fact the class living in the city has paid twice as much of course because of the greater value of their property; the rate of assessment has been the same as near as practicable, but while $2,000.00 have gone into the country for the public highways there only half so much has remained to the maintenance of the public highways lying inside of the corporate limits. But legislators knew that the city government would or ought to take care of any deficiency in that direction by the exaction of other levies under city

ordinances. So following this motion suggested by counsel out to its legitimate end we see that what with the $2,000.00 in the illustration gathered from dwellers in town and other possible taxes for streets the latter would suffer in the pocket on account of public roads a great deal more than their brethren in the country, and hence if the Constitution should happen to get injured by this kind of business it would be in a direc- tion opposite to that maintained on the other side and the victim would not be in position to attack the law that hurt him, because he could be answered by tell- ing to go to that subordinate legislature—the city council—and have his woes alleviated. But I suspect the real truth to be that this kind of test put as it is by counsel opposed as well as ourselves, is not suffi- cient if there really be an infraction of Art. 9, sec. 1, of the Constitution, to develop it. We are endeavor- ing to meet the assault of our adversaries as it is made. In reference to the case of Prim vs. City, etc., 59 Ill. 142, we say it is not in point as will appear from the statement made on page 145 by the court showing an effort by the Legislature in the act under discussion to "clothe corporate authorities * * * with power to assess and collect taxes from only a part of the munici- pality, for a corporate purpose." Certainly that was a flagrant violation of the principle in hand.

"There is no imperative requirement that taxation shall be equal. If there were, the operations of gov- ernment must come to a stop, from the absolute im- possibility of fulfilling it. Cooley on Taxation, 2d ed. p. 164.

Again the same author quoting, on page 167, from 5 Allen 428, "Perfect equality in the assessment of taxes is unattainable."

We submit confidently that the sin of working in-

214 SUPREME COURT.

County Comm'rs of Duval Co. v. City of Jacksonville.—Argument.

equality in rate of taxation against Art. 9, sec. 1, can not be laid at the door of the *proviso* to sec 17, Chap. 4014 of our laws.

4. The 2d error assigned is in granting the peremptory writ. Gathering the salient facts set up in the answer together the argument of counsel as we understand it is that because by the accident of the situation, that, when commanded by this writ to do what the *proviso* to sec. 17 in question had commanded them all along to do, there was only a small portion of the amount due to the city left in the county treasury, therefore the court has demanded of them an impossibility and hence it was error to issue the peremptory writ. We contend that neither the absence of demand, nor the expenditure of well nigh all of this special fund, nor any of the other minor reasons set up in their answer and insisted upon by counsel in argument nor all of them taken together can place the circuit in error upon the record sent here in the matter of issuing this peremptory writ. We dispose of the statement from 4th Am. & Eng. Encyc. of Law, 401, by saying we agree entirely with it, in every respect, it refers to an Alabama case in which commissioners were sheltered from the mandate of such a writ requiring them to make an appropriation to pay claims against the county which has never even been audited. But that is not an authority for refusing mandamus to compel payment of a certain part of a special and specific fund raised by taxation for a definite purpose named in a statute which makes the commissioners the superintendent of the subject matter on which that money is to be expended, and at the same time' the paymasters under whose "directions" that fund is "to be expended." In answer to the argument made upon this branch of the case which is the con-

clusion of the whole matter I cite the statute, Chap. 4014, sec. 17, and the proviso under consideration, and Spelling on Extra Relief, 2d Vol. sec. 1458 and authorities cited in the notes.

MABRY, C. J.:

It is contended for plaintiffs in error that the proviso of section 17 of the act of 1891, Chapter 4014, the basis for this suit, is in conflict with the Constitution in two particulars. The first one is, that the subject matter of the proviso is not expressed in the title of the act, as required by section 16 of Article III of the Constitution; and the second is, that it is an attempt to divert money raised by taxation for county purposes to other and unauthorized uses, in violation of section 5 of Article IX of the Constitution. The title of the act in question is: "An act to provide for establishing, working, repairing and maintaining the public roads and bridges of the several counties of this State, and to provide penalties for failure thereof." Provision is made in the act for working, repairing and maintaining the public roads of the counties of the State by means of manual labor by the residents of the several counties subject to road duty, aided for building and repairing bridges by a one mill tax on the dollar, in case such roads and bridges are not worked, repaired and maintained by a special tax as provided in the seventeenth section of the act. After defining the powers and duties of the County Commissioners of the county over and in reference to the public roads and bridges, directing the division of the counties into road districts and providing the manner of compelling those subject to road duty to work the roads, it is provided in the sixteenth section that "no person residing in and paying municipal taxes to any

216 SUPREME COURT.

County Comm'rs of Duval Co. v. City of Jacksonville.—Opinion.

incorporated town or city shall be required to work on the public roads under this law." The seventeenth section authorizes the County Commissioners of any county whenever deemed advisable and for the public good, to levy a special tax for public roads and bridges, not to exceed three mills on the dollar, on all the real and personal property in the county subject to taxation, which tax shall be assessed and collected as other taxes of the county, and the money arising therefrom to be paid into the county treasury as a special fund to be expended under the direction of the County Commissioners solely for the purpose of maintaining, working and keeping in good condition the public roads and bridges of the county and in purchasing tools and materials for that purpose. The proviso to this section reads: "provided, however, that one-half of the amount realized from said special tax on property in incorporated cities or towns shall be turned over to the municipal authorities of said cities or towns, to be used in the repairing working and improving and laying out the streets thereof, as may be prescribed by the ordinances of said cities or towns." When the special tax for working and maintaining the public roads and bridges is levied, no person residin the county shall be required to work on the public roads of the county.

We will first consider the contention that the provision for turning over one-half of the money raised for the public roads and bridges of the county to the municipal authorities to be used by them in laying out and maintaining the streets thereof is a devotion of it to other than county purposes. It is beyond question that, under section 5 of Article IX of the Constitution, the Legislature can not authorize counties to levy taxes for any other than county purposes,

nor can counties be authorized to devote money so raised to any other than such purposes. Skinner vs. Henderson, 26 Fla. 121, 7 South. Rep. 464; Stockton vs. Powell, 29 Fla. 1, 10 South. Rep. 688; Mayor, etc., of Nashville, vs. Towns. 5 Sneed, 186. In the case of State *ex rel.* vs. Commissioners of Putnam County, 25 Fla. 632, 3 South. Rep. 164, the question presented was whether the County Commissioners had been deprived of jurisdiction over that part of a public road of the county included within the corporate limits of a town subsequently incorporated under the general law for the incorporation of cities and towns. The court said, in effect, that whether the County Commissioners had been deprived of a jurisdiction of such road within the new town organization depended upon the legislation on the subject of public roads and of municipal corporations, and that the intent of the Legislature, as manifested by the statutes, would control. The conclusion was that the County Commissioners had not been so deprived of jurisdiction over the road. As shown in the case of Skinner vs. Henderson, *supra*, the city of Tampa has entered into a contract for the construction of a bridge over a river within the corporate limits of the city, and the County Commissioners, on petition for that purpose, ordered that a portion of the cost of the bridge be paid by the county. The payment of the money by the county was enjoined and the bill filed for this purpose, among other things, alleged that the bridge was wholly within the corporate limits, entirely a municipal improvement, and not a county purpose within the meaning of the Constitution. Such allegation being admitted to be true on demurrer, it was held that the County Commissioners had no authority to appropriate the money. Anticipating the questions that might arise

in the case, the court further said that the statute authorizing the city to build bridges within its limits did not necessarily revoke the authority given to the county by general statute without restriction as to locality, to build a bridge within the city limits. As there may be bridges serving only a city purpose, so there may be others demanded in the same territory for county purposes, and where the circumstances create this demand, and the bridge is for the use and benefit of the people of the county at large, or of some considerable portion of them, and intended and needed as well for those outside as for those inside the city, the authority of the county to build it is not annulled by the local city statute, some courts hold that statutes conferring, in general terms, authority upon counties to establish and maintain public roads and bridges in the counties without restriction as to locality will not be construed so as to authorize its exercise within the teritorial limits of incorporated towns or cities situated therein, when legislative authority has been given such towns and cities to establish and maintain municipal streets and highways. We need not go into a discussion of such decisions, as this court has admitted their existence and refused to follow them.

In State *ex rel.* vs. Commissioners of Putnam County, *supra,* it is said: "Though all public roads and all streets are public highways, yet neither all public highways nor all public roads are streets, or city or town highways. * * Public roads are established by the county authorities with reference to the convenience of the people of the county of neighborhoods therein; streets and other municipal highways are located in obedience to the dictation of the welfare and convenience of the town or city. The road may be so located

in the town that no interest of the municipality would dictate its maintenance at municipal expense; it may touch no municipal highway of any kind." The case of Skinner vs. Henderson clearly recognizes a distinctly municipal or county purpose in respect to a bridge within the corporate limits, and also a mixed or double municipal and county purpose in respect to the same bridge, dependent upon the circumstances of each particular case. In both of the decisions just referred to the legislative intent, as manifested by the legislation on the subject of public roads and bridges, and in reference to the municipalities in question, was recognized as controlling. The question we are to deal with is not so much one of legislative intent as one of legislative power. The seventeenth section of the act before us expressly authorizes the County Commissioners of any county in the State, when deemed advisable and for the public good, to levy a special tax not exceeding three mills for working and maintaining the public roads of the county, and directs that one-half of the amount realized from said tax on property in incorporated cities and towns shall be turned over to the municipal authorities thereof to be used in repairing, working and improving and laying out the streets thereof as may be prescribed by ordinances. There is no doubt about the legislative intent here, and if there is no constitutional inhibition against carrying it out, it is the duty of the court to inforce it. The act must be clearly unconstitutional before we are authorized to set it aside on such grounds. If we entertain any well-founded or reasonable doubt about the constitutionality of the act, we must, in deference to the legislative department, uphold it. This rule of constitutional construction is well-settled. State *ex rel.* vs. Hocker, 36 Fla. ——, 18 South. Rep. ——. If

the establishment and maintenance of streets in incorporated towns and cities can not be declared by the Legislature, or regarded to any extent, a county purpose within the meaning of the provision of the Constitution on the subject, then the proviso to the act in question directing that a portion of the money raised by taxation for the public roads and bridges of the county be turned over to the municipal authorities for the purpose mentioned, is unauthorized and void. That locality alone within the corporate limits can not determine the character of the purpose, is clearly pointed out by the decisions in this court already referred to, and even under statutes giving general authority over public roads and bridges to County Commissioners, taken in connection with statutory authority in municipal bodies over streets, lanes and allies within their limits, it may be that a street will subserve both a county and municipal purpose. If such should be the case there would be no difficulty, according to the reasoning in the decision in Skinner vs. Henderson, in appropriating road money raised by county taxation to all such streets that exist in incorporated towns and cities. So long as the money is devoted to such streets, even though expended under the agency of the municipal corporation, it would not be a diversion of it under such statutes from strictly county purposes. We have no information in the record as to the character of the streets in the city of Jacksonville for the establishment and maintenance of which the funds in question are demanded, and even under statutes similar to those existing when the decisions to which we have referred were made, it would be difficult to affirm that the devotion of part of the money raised by taxation on the property in the town or city to maintaining the streets therein would be a diversion of it from

county purposes. Halsey vs. People *ex rel.*, 84 Ill. 89. But, as before stated, there is a specific statutory direction that one-half of the road money raised by county taxation from the taxable property in incorporated towns and cities shall be turned over to their municipal authorities for the specific purpose of laying out and maintaining the streets therein, and, conceding this to be a direction to turn the money over to the municipal authorities to be applied 'by them on any or all of the streets of the municipality, without distinction, the question is, is such an object so far foreign to a county organization, or a county purpose as to be forbidden by the Constitution under county taxation for public roads or highways. The authorities have formulated no generally accepted definition of county purposes, but leave each case involving the question to be decided as it may arise. Cotton vs. County Commissioners of Leon Co., 6 Fla. 610; Stockton vs. Powell, *supra*. In the first mentioned case it is said: "The Constitution does not attempt to give a definition of county purpose, and to obtain a correct interpretation of that phrase we must look to the contemporaneous legislation upon that subject and the uniform action of the county courts under the territorial government. By this reference it will be abundantly demonstrated that at that day county purposes were taken to embrace principally the erection and repair of court houses and jails, the opening and maintaining public thoroughfares within the limits of their respective counties, by opening roads, building bridges and causeways and keeping the same in repair, licensing and regulating ferries and toll-bridges, etc. It is thus seen that the entire subject of highways was at the time of the Constitution, an object peculiarly within the jurisdiction of the county authorities, and

we are hence warranted in the assumption that it was so understood by the convention when they used the phrase 'county purposes'."

In Commissioners of Hamilton County vs. Mighels, 7 Ohio St. 109, the court say: "A county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact, but a branch of the general administration of that policy." The Legislature has always under our system of government had plenary control of all public highways whether they be public county roads or streets in cities and towns. State ex rel. vs. Jacksonville Street Ry. Co., 29 Fla. 590, 10 South. Rep. 590. Cooley on Taxation, page 130, says: "One of the most important functions of government is the making provision for public roads for the use of the people. The variety of these is great, and the modes of construction and operation are different. No question is made of the competency of the Legislature to levy taxes for the common highway, the improved turnpike and macademized road, the planked or paved street, the canal, the tramway or the railway. Any or all of them may be constructed by the State, or under State authority, by the municipal subdivisions of the State within whose limits they may be needed." The decision in the case of Supervisors of Will County vs. People ex rel., 110 Ill. 511, makes a distinction between raising money by taxation for she purpose of building

bridges and maintaining public highways, and for the purpose of carrying on other more private concerns of a municipality. It was there held that the raising of money by taxation in towns or counties in pursuance of a general law of the State, for the purpose of building bridges, maintaining public highways, and for other objects of a similar character, in which the people of the State at large are directly interested, is not the levying of a tax for a strictly local corporate purpose within the meaning of the Illinois constitution. In that case a mandamus was sustained against the Board of County Commissioners of the county to compel the levy and collection of a tax upon the property of a county to aid the commissioners of highways of the town of Wilmington to build a bridge across a river within the limits of said town. It is true that there may be a distinctively municipal purpose, as distinguished from county purpose, and, in our judgment, the Constitution of the State recognizes such distinction, but in reference to the laying out and maintenance of public streets, or municipal highways, over which not only the people of the municipality, but of the entire county, can travel, it can not be said, we think, that they are so distinctively and exclusively a municipal purpose as to render it impossible for the Legislature to authorize the counties to devote revenue raised by county taxation for public roads on the property situated within the municipalities to the maintenance of the public streets therein. The result of this conclusion is, that the proviso in question is not in conflict with section 5 of Article IX of the Constitution.

The objection that the subject-matter of the proviso to section 17 is not expressed in the title of the act can not, in our judgment, be sustained. It is not ques-

224      SUPREME COURT.

County Comm'rs of Duval Co. v. City of Jacksonville.—Opinion.

tioned that it was not competent for the Legislature under the title of the act to authorize the County Commissioners, when deemed advisable and for the public good, to levy a special tax not exceeding three mills on the dollar on the entire taxable property of the county for the purpose of maintaining, working and repairing the public roads therein. What matter is properly connected with the expenditure of the money raised by such a levy? It was held in State *ex rel.* vs. Board of Commissioners of Montgomery Co., 26 Ind. 522, that "when a matter is so closely connected with the subject of the act as to create a doubt whether it is not included within it, the court will not consider the question whether the legislative action upon it violates the constitutional prohibition relating to the title of laws." "A street is a public road or way in the city, town or village. All streets are highways, but all highways are not necessarily streets." 24 Am. & Eng. Ency. of Law, page 2. All highways, whether public roads or streets, are subject to the control of the Legislature. Our constitutional requirement in reference to the subject-matter and titles of laws is, that each law shall embrace but one subject and matter properly connected therewith, and that the subject shall be briefly expressed in the title. It is not essential that the title should give a synopsis of all the means by which the object of the law is to be accomplished by the provisions in its body. State *ex rel.* vs. L. Hilton Green, 36 Fla. 154, 18 South. Rep. ——. The title of an act may be general, and so long as the generality of the subject therein expressed is not employed as a guise to conceal the real object of the law, or some provision therein, it will not be objectionable. It is also true that the title to an act may be so restrictive in reference to a subject expressed therein as

JUNE TERM, 1895.          225.

County Comm'rs of Duval Co. v. City of Jacksonville.—Opinion.

to confine the body of the act to such phase of the subject as is indicated by the title.  State *ex rel.* Gonzales vs. Palmes, 23 Fla. 620, 3 South. Rep. 171; Cooley's Const. Lim. (6th ed.), page 172.  The general subject of the title of the act we are considering is the laying out and maintaining the public roads of the counties, and streets are public roads or highways within the limited space of the municipalities within the counties.  We deem the provision as to applying a part of the road tax to the streets in incorporated cities and towns in a county as matter properly connected with the maintenance of public roads in the county; at least it is so closely connected therewith as to create a doubt whether it is not included in the general subject of the roads of the county.

In the case of Mayor, etc., of Knoxville, vs. Lewis, 12 Lea, 180, cited by counsel for plaintiffs in error, the title of the act considered was to provide more just and equitable laws for the assessment and collection of revenue for *State and county purposes*, and to repeal all laws then in force whereby revenue was collected for the assessment of real estate, personal property, privileges and polls.  The act contained many sections, and after making provisions on the subject of assessing and collecting State and county revenue, it enacted, in the fiftieth section, that the county clerk should collect the municipal revenues.  Under the law previously existing the municipal recorder collected the town taxes.  Under a constitution similar to ours as to the subject-matter and title of an act it was held that the fiftieth section introduced a new subject not expressed in the title, and the entire act was void.  In reaching this conclusion the court said there was a distinction between State and county revenue, and

municipal revenue, recognized by the Constitution itself, and as a result the Legislature had undertaken to introduce into the act on the subject of State and county revenue provisions in reference to a different subject not expressed in the title. Our Constitution recognizes a difference between taxation for distinctively county or municipal purposes, but in reference to public highways, whether public roads or urban highways, in the county, it is competent for the Legislature to authorize the counties to raise money by taxation for their maintenance.

The turning over of one-half of the money raised from the property in the towns and cities does not destroy the equality and uniformity of the tax itself. The levy is made upon all the taxable property of the county just as any other tax is assessed and levied, and all property in the county bears an equal portion of the burden of such tax in proportion to its value. Sangamon Co. vs. City of Springfield, 63 Ill. 66.

It is further objected that the statute does not require the County Commissioners to turn over the money to the municipal authorities, or that it is left in doubt as to whose duty it was to turn over the money, and that the relief by mandamus will be refused when the right is doubtful. It will be seen that the seventeenth section directs the money when collected to be paid into the county treasury as a special fund to be expended under the direction of the County Commissioners solely for the purpose of maintaining, working, repairing and keeping in good condition the public roads and bridges of the county, and for purchasing suitable tools, implements and material for that purpose, "provided, however, that one-half of the amount realized from said special tax on property in incorporated cities or towns shall be turned over to

JUNE TERM, 1895.    227

County Comm'rs of Duval Co. v. City of Jacksonville.—Opinion.

the municipal authorities of said cities or towns to be used in the repairing, working and improving and laying out the streets thereof as may be prescribed by the ordinances of said cities or towns." No money can be drawn from the county treasury except upon warrant drawn by the order of the County Commissioners, and the warrant shall specify the particular fund upon which it is drawn (secs. 584, 585 Rev. Stat.) The county treasurer is required to keep the various county funds separate (sec. 586), and he is forbidden to pay out any money in his hands as county treasurer except upon warrant drawn as provided under an order of the County Commissioners. If the municipal authorities are entitled to any portion of the special fune raised for the maintenance of the public roads of the county and required to be paid into the county treasury, it is evident that it is the clear duty of the County Commissioners under the statutes mentioned to draw the warrant for the money. The municipal authorities are compelled to obtain such warrant before they can call upon the county treasurer for the money, and the plain duty in such a case rests upon the County Commissioners to issue the warrant.

The only other contention demanding any discussion is, that the peremptory writ commands the County Commissioners to forthwith turn over to the municipal authorities of Jacksonville $5,746.74, when, as shown by the return, only $758.91 remained in the treasury to the credit of the public road fund. The case was disposed of on the alternative writ and return thereto, and as shown by the return one-half of the amount collected and paid into the county treasury on property in the city of Jacksonville as a road fund for the years 1891, 1892 and 1893 was $8,455.79. The sum of $2,709.05, it is conceded, had been paid, and the bal-

ance amounted to $5,746.74.    This last sum is the-
amount ordered by the court in the peremptory writ
to be immediately turned over to the city authorities.
The return distinctly alleges that the whole amount
had been required and used for the purpose of keeping-
the county roads and bridges in good repair, except
the sum of $758.91, the balance remaining in the hands
of the county treasurer.    According to the return of
the County Commissioners, it is clearly shown that the-
county had expended all the road and bridge fund ex-
cept the amount stated, and that the only sum received
by the city authorities was $2,746.05.    The county had
expended largely the city's part of the road money,
but the money, as is clearly shown, is not in the-
county treasury to be turned over, and the question
arises, to what extent will the remedy of mandamus
apply ?    The writ of mandamus is a discretionary
remedy, and while the courts will apply in proper
cases, they often refuse it when it would be attended
by no beneficial results.    State *ex rel.* vs. Commission--
ers of Marion Co., 27 Fla. 438, 8 South. Rep. 749.    A
peremptory writ of mandamus will not usually issue
commanding an officer to do what is not within his
power to do, and though by putting it out of his power-
to perform a duty he may become liable in damages,
still where he can not perform the act, and this is
clear to the court, mandamus will not be issued against
him.    This rule has been applied to public officers who
have improperly diverted funds in their hands or un-
der their control so that they are unable to comply
with some duty in reference to their disposal.    Rice
vs. Walker, 44 Iowa, 458; Bates vs. Porter, 74 Cal.
224; Universal Church vs. Trustees of Columbia Town-
ship, 6 Ohio, 446, S. C. 27 Am. Dec. 267; State *ex rel.*
Board of Freeholders vs. Township of Lacey, 42 N..

J. L. 536; People *ex rel.* vs. Tremain, 29 Barb. 96; State *ex rel.* vs. City of New Orleans, 34 La. Ann. 469; Township Board of. Education vs. Boyd, 58 Mo. 276. Under the showing made, we think the court should not have undertaken to compel the County Commissioners to turn over money that was not under their control, and which it was not in their power to do as officials of the county. The judgment should have commanded the County Commissioners to turn over the road funds in the county treasury by issuing a warrant on the treasurer for that purpose. To this extent only should the remedy by mandamus be applied in this case.

The judgment is reversed with directions that the Circuit Court enter judgment in accordance with this opinion.