THE STATE OF FLORIDA EX REL. C. L. MITCHELL, PLAIN-TIFF, VS. W. D. BLOXHAM, COMPTROLLER, DEFENDANT.

1. Where a Constitution, as revised, provides that an officer holding under the former Constitution shall assume an office of another name created by the new and having all the duties of the other office and also additional duties, the effect of the new instrument is that the old office shall cease upon the new instrument becoming operative; and this although some of such additional duties may under the terms of the new instrument be performable for a limited time by another officer.

2. It is provided by the present Constitution, (Section 8 of the schedule) that the Commissioner of Lands and Immigration

in office under the former Constitution at the time the present one became operative should assume the office of Commissioner of Agriculture, and that (Section 29, Article 4,) the salary of the Commissioner of Agriculture shall be fifteen hundred dollars: *Held*, that the Commissioner of Lands and Immigration under the former Constitution became the Commissioner of Agriculture upon the new organic law becoming operative, and that his salary from the first day of January, 1887, was fifteen hundred dollars a year.

3. Where the Constitution prescribes the salary of an officer, and the legislature enacts a law appropriating an amount large enough to permit his being paid more, the statute is not legal authority for paying more than the salary prescribed by the Constitution.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*D. S. Walker, Jr.* for Relator.

The plaintiff was appointed and commissioned Commissioner of Lands and Immigration of the State of Florida on the——day of January, 1885, for four years from that date.

Section 8, Article 18, of the Constitution of 1885, is as follows : "Upon the ratification of this Constitution, the Commissioner of Lands and Immigration shall assume the office of Commissioner of Agriculture, and his duties as such, shall be prescribed by the first Legislature assembled under this Constitution." The Legislature which met in April, 1887, was the first Legislature assembled under the new Constitution. No duties were prescribed by this Legislature for the Commissioner of Lands and Immigration to perform, relating to the office of Commissioner of Agriculture, and the said Legislature allowed and appropriated $2,000 each year, for the years 1887 and 1888, for the payment of his salary, and he performed the duties of Commis-

sioner of Lands and Immigration as provided by law for the said two years, until his successor was qualified on the 8th day of last month.

No salary is prescribed for the Commissioner of Lands and Immigration in the new Constitution. When the first quarter of his salary became due for 1887, he made his application to the Comptroller for a warrant on the Treasurer for $500 and the Comptroller refused to give him a warrant for but $375, and has always since refused to allow him more than that amount per quarter. He therefore claims a writ of mandamus to compel the Comptroller to issue a warrant for $1,000, the amount still due him for balance of salary for the years 1887 and 1888.

I shall argue this case under two propositions.

First. I take it to be the opinion of this Court given in the case of Russell vs. the Comptroller, that when the salary is prescribed in the new Constitution for a State officer holding office under the old Constitution, and who is recognized as still an officer under the new Constitution, the Legislature may allow and appropriate a salary for such officer, and hence I contend that the salary fixed by the Legislature of 1887 for the Commissioner of Lands and Immigration should be paid him, because he is recognized as a State officer by the new Constitution, but no salary is prescribed therein for him.

But suppose it is objected that though the Commissioner of Lands and Immigration is recognized as an officer of the State by the new Constitution, no duties are prescribed for him except those prescribed for the Commissioner of Agriculture, whose office he is required to assume, and that therefore he must be paid the salary prescribed by the Constitution for the Commissioner of Agriculture. Is there

any thing in this which is a constitutional prohibition upon the Legislature from allowing and appropriating a salary of $2,000 for his payment as Commissioner of Lands and Immigration? On the contrary, since the Legislature prescribed no duties for the Commissioner of Agriculture, but appropriated a salary of $2,000, we must conclude that the Legislature, in its wisdom, very properly and justly decided to allow the Commissioner of Lands and Immigration the same salary he had been previously receiving, as under the circumstances he was compelled to perform the same duties he had previously performed for the remaining two years of his term.

Secondly. The Legislature certainly appropriated $2,000 to pay the salary of the Commissioner of Lands and Immigration, for this Court has decided in Russell vs. The Comptroller, that the appropriations for the salaries of the officers of the Administrative Department by the Legislature of 1887, is a legislative construction of the Constitution to the effect that these officers are entitled to salaries of $2,000, and as there is no prescription by the Constitution of the salary of the Commissioner of Lands and Immigration, the Comptroller has no excuse for refusing to audit the salary of said officer as provided by the statute, for this Court has also decided that the justification of the Comptroller to refuse to audit the account of an officer's salary as prescribed by the legislative act, is the fact that the salary as allowed by the act is greater than that allowed by the Constitution. The Comptroller may think that the Legislature should have given the Commissioner of Lands and Immigration the salary prescribed for the Commissioner of Agriculture by the Constitution, but the Legislature thought differently, and having the power to give him that salary, or the salary he had been previously receiving, or indeed both (unless re-

stricted in allowing both by Section 29, Article 4) chose in its wisdom to give·him $2,000.

Now, whose opinion should prevail, that of the Legislature, expressed by its solemn act, representing all the people of the State of Florida, and endorsed and approved by the Governor of the State, or that of the Comptroller ?

Another reason which may have led the Legislature to appropriate $2,000 instead of $1500 for the salary of Commissioner of Lands and Immigration was perhaps the restriction as to salaries in Section 29, Article 4, of the new Constitution, which provides that no officer of the Executive Department shall receive any additional compensation beyond his salary for any service or services rendered the State in connection with the Internal Improvement Fund or other interest belonging to the State of Florida, for had the Legislature appropriated $1500, the inference would have been, that it was to pay the Commissioner of Lands and Immigration for services as Commissioner of Agriculture, which would have been unconstitutional, for, although no other salary had been appropriated to pay him, still, the question might have arisen, whether the Commissioner of Lands and Immigration could receive the pay of Commissioner of Agriculture. That is, whether, under said Section 29, Article 4, he would not have been required to wait until the Legislature appropriated money to pay his salary as Commissioner of Lands and Immigration.

And still another reason might have been that the proviso in Section 16, Article 4, which retains the office of Adjutant-General as there constituted, until the expiration of the existing term, prevented the Legislature from complying with the requirements of Section 26, Article 4, since a compliance with the latter section would have been a violation of said Section 16, in that it would have made changes in

the office of Adjutant-General as then constituted, by transferring some of the duties of that office to the office of Commissioner of Agriculture.

All these were matters proper for the members of the Legislature to consider, and which they doubtless did consider, when, in order to leave no doubt of their intention, they appropriated $2,000 to pay the Commissioner of Lands and Immigration and made no appropriation for his payment for performing the duties of Commissioner of Agriculture.

*The Attorney-General* for Respondent.

1. New Constitution went into effect January 1, 1887. Ordinance No. 1, new Constitution, Section 2.

2. It superseded the Constitution of 1868 with amendments thereto, not excepting anywhere in the same the office of Commissioner of Lands and Immigration. Schedule, new Constitution, Section 1.

3. The administrative officers of the State of Florida are designated in the new Constitution, Article 4, Section 20, among which is the Commissioner of Agriculture.

4. The duties of such Commissioner of Agriculture are defined, Article 4, Section 26, new Constitution, embracing among others, "supervision of all matters pertaining to the public lands under regulations prescribed by law, and shall keep the Bureau of Immigration." This was formerly the duty of Commissioner of Lands and Immigration.

5. New Constitution designates the Commissioner of Lands and Immigration as the one who shall assume the office of Commissioner of Agriculture.

An office is a public station, embracing the ideas of tenure, duration, emoluments and duties. Wallace, (U. S.), 385.

The person who fills the same is the officer. 36 Miss. 273.

6. The salary of Commissioner of Agriculture is fixed in new Constitution, Article 14, Section 29, at $1.500 a year.

7. A failure on the part of the Commissioner of Agriculture for the years A. D. 1887 and 1888 to sign his name and title as such Commissioner to deeds or other papers requiring by law his signature, if such signature was really required, does not affect his real title under the new Constitution, nor the pay fixed by the new Constitution for his office.

The Hon. David S. Walker, Judge of the Second Judicial Circuit, sat in the place of Mr. Justice Mitchell, who was disqualified.

RANEY, C. J.    The relator was at the ratification of the present Constitution in 1886, Commissioner of Lands and Immigration under the Constitution of 1868, as amended in 1871, and claims that he continued to be such officer till the first Tuesday after the first Monday in January, 1889, and that he was entitled to be paid a salary at the rate of $2,000 per annum.    The defendant's contention is that the relator ceased to be Commissioner of Lands and Immigration, and became Commissioner of Agriculture under the new Constitution upon its ratification in November 1886, or its becoming operative in January 1887, and that $1,500 per annum was his salary from the latter date.

The present Constitution was framed in 1885, ratified by the people at the election held in November, 1886, and under a provision of the ordinance directing its submission to a popular vote, went into effect the first day of January, 1887.

The 20th section of the Executive Article is :    The Governor shall be assisted by administrative officers as follows: A Secretary of State, Attorney-General, Comptroller, Treas-

urer, Superintendent of Public Instruction, and Commissioner of Agriculture, who shall be elected at the same time as the Governor, and shall hold their offices for the same term; *Provided*, That the first election of such officers shall be at the time of voting for Governor, A. D. 1888.

The 26th section of the same article is as follows: The Commissioner of Agriculture shall perform such duties in relation to agriculture as may be prescribed by law; shall have supervision of all matters pertaining to the public lands under regulations prescribed by law, and shall keep the Bureau of Immigration. He shall also have supervision of the State Prison, and shall perform such other duties as may be prescribed by law.

The 1st section of the schedule, or 18th article, of the Constitution reads thus: "The Constitution adopted A. D. 1868, with amendments thereto, is declared to be superseded by this Constitution. But all rights, actions, claims and contracts, both as respects individuals and bodies corporate, shall continue to be as valid as if this Constitution had not been adopted. And all fines, taxes, penalties and forfeitures due and owing to the State of Florida, under the Constitution of 1868, shall enure to the use of the State under this Constitution."

The 3d section of this article is: All persons holding any office or appointment at the ratification of this Constitution, shall continue in the exercise of the duties thereof according to their respective commissions or appointments or until their successors are duly qualified, unless by this Constitution otherwise provided.

The 4th section is: Nothing contained in this Constitution shall operate to vacate the office of Lieutenant-Governor until the expiration of his present term.

- The 8th section is: Upon the ratification of this Constitution the Commissioner of Lands and Immigration shall assume the office of Commissioner of Agriculture, and his duties as such shall be prescribed by the first Legislature assembled under this Constitution.

The Constitution of 1885 is a revision of that of 1868, (State *ex. rel.* vs. George, 23 Fla., 585,) and both as a revision, and by virtue of the 1st section of the schedule, *supra*, the former organic law was entirely done away with by the latter upon its going into effect January 1, 1887, except such parts of the old as were expressly retained by the new.

We held in State *ex rel.* vs. County Commissioners of Duval county, 23 Fla., 483, that the office of Lieutenant-Governor under the former instrument would have expired upon the election of a President of the Senate in 1887, under the 6th section of the Legislative Article of the new organic law had it not been for the *fourth* section of the schedule, *supra*, but that the effect of this section was to continue the office of Lieutenant-Governor, with its functions, as it was constituted by the former Constitution, Section 14, Article 5, as amended in 1875, until the expiration of the term for which the incumbent holding at the ratification of the new instrument, was elected, and that that part of Section 6 of the new Constitution providing that the Senate at the convening of each regular session should choose a permanent President, did not go into effect until the session of 1889, as the functions of the office of Lieutenant-Governor, continued by the 4th section of the schedule, included the presidency of the Senate, and it must have been the purpose of the framers of the Constitution and of the people, in adopting it, that the provisions of the new instrument as to a President of the Senate should stand inoperative until the meeting of the Legislature of 1889. The Legislature of

1887 did not elect a permanent President, but was presided over by the Lieutenant-Governor.

The 8th section of the schedule, in providing that the Commissioner of Lands and Immigration should, upon the ratification of the new Constitution, assume the duties of Commissioner of Agriculture, affords an instance in which that instrument did not intend that a person holding office should continue after the new instrument became operative in the exercise of the duties of the *same* office, according to his commission, until his successor was duly qualified. The person holding the office of Commissioner of Lands and Immigration was to assume the office of Commissioner of Agriculture. The purpose of the third section was to continue the occupants of office in office where the office itself was continued. It was not to continue an office which other parts of the Constitution showed a clear intent to abolish upon the ratification or the taking effect of that instrument. The office which the person holding the office of Commissioner of Lands and Immigration was to assume under section eight was that of Commissioner of Agriculture under the new instrument. The duties of this office as shown above, Section 26 of the Executive Article, were such duties in relation to agriculture as might be prescribed by law, supervision of all matters pertaining to the public lands under regulations prescribed by law, to keep the Bureau of Immigration, and have supervision of the State Prison, and such other duties as might be prescribed by law. An amendment of 1871 to the Constitution of 1868 consolidated the office of Surveyor-General and that of Commissioner of Immigration under the name of Commissioner of Lands and Immigration. The duties of the former office as prescribed by that Constitution were the supervision of all matters pertaining to the public lands, and of the other

office to organize a Bureau of Immigration for the purpose of furnishing information and for the encouragement of immigration. The office of Commissioner of Immigration was under the original instrument, as it stood prior to the amendment, to expire at the end of fifteen years from the ratification of the instrument, with power, however, in the Legislature to continue it by law.

It is clear that the person holding the office of Commissioner of Lands and Immigration was to assume under the new Constitution an office whose duties included all those which had devolved upon him as such Commissioner, and also other duties of another character. The provision of Section 8 of the schedule embodied in the language, "and his duties as such shall be prescribed by the first Legislature assembled under this Constitution," is not a limitation upon the functions which he was to assume, but it was a direction to the Legislature to do at *its first session* whatever was necessary to be done by it under the 26th section of the Executive Article, whose provisions are given above. His duties, not with reference to agriculture, but as Commissioner of Agriculture, or as to any and all matters within the provisions of the 26th section just mentioned, in so far as legislation might be necessary were to be prescribed at that session. The only purpose these particular words of the 8th section of the schedule subserve is, in view of what is said in the section of the Executive Article, a direction to the Legislature as to the time of its action or for prompt action ; everything else is implied by provisions of the Executive Section as to duties that may be "prescribed by law."

To say that it was intended by the Constitution that the person holding the office of Commissioner of Lands and Immigration should continue to hold such office, involves

the conclusion of a purpose that he should hold two distinct offices, of which one included all the duties of the other. When a person assumes an office, the office is necessarily an existing thing. It does not simply say that he shall perform the duties or certain duties of the office, but he is to assume the office, and this means he is to take the office and become that officer with all its duties, whatever they may be, and not that he is to perform its duties under the name or authority of another or former office. Again, it will be observed that the duties to be prescribed at such first session of the Legislature are not those as Commissioner of Lands and Immigration, but as Commissioner of Agriculture.

Not only is it thus clear that the person holding the office of Commissioner of Lands and Immigration at the ratification of the present Constitution was not to continue in the exercise of the duties of such office, but was to assume a new office upon which were devolved the same and additional duties, but it is also clear from other parts of the Constitution that the office of Commissioner of Lands and Immigration, as a distinct administrative office, was to expire with the old instrument. The 20th section of the Executive Article mentioned at the outset of this opinion, takes the place of the 17th section of the 5th or Executive Article and the 1st section of the 7th or Administrative Article of the former Constitution. The officers named by the latter section were, giving effect to the consolidation referred to above as made by the amendment of 1871, those mentioned in the 20th section of the Executive Article of the new Constitution, an Adjutant-General and the Commissioner of Lands and Immigration. There is not to be found anywhere in the new Constitution, except in the 8th section of the schedule, any mention of the office of Commissioner

of Lands and Immigration. Its omission from the 20th section and elsewhere, taken in connection with the provision that the person occupying it should on the ratification of the Constitution assume a new office, such new office including the same and other duties, is inconsistent with the idea of even a temporary continuance of the old office after the new instrument should become operative. The omission of the Adjutant-General from the 20th section mentioned above, is not characterized by a similar omission from other parts of the new instrument. The 16th section of the Executive Article provides for the appointment by the Governor of all commissioned militia officers, including the Adjutant-General for the State, whose "duties and compensation" were to be prescribed by law, with a proviso, however, "that this Constitution shall work no vacancy in the office of Adjutant-General as now constituted, until the expiration of the present term." If this proviso was intended to preserve the *office* of Adjutant-General as formerly constituted until the expiration of the term existing at the ratification of the new instrument, then the idea of its framers must have been that in the absence of such proviso the office of Adjutant-General as it was then constituted would have become extinct upon the first day of January, 1887, and it would after that have been the duty of the Governor to appoint an Adjutant-General for the State under the new Constitution. But for this *proviso*, the section to which it is annexed would, considering the omission of the office of Adjutant-General from the 20th section of the Executive Article, have placed that officer among those excepted from the general provision of the 3d section of the schedule, because it is plain that but for this proviso the meaning of the Constitution would be that the office of Adjutant-General, as it was constituted, should not continue to exist even temporarily.

It is the ordinary purpose of a schedule to make temporary provision for government until the new organic law can be put in full operation, and this was the purpose of the third article of the schedule before us, yet it is plain from the last five words of it that it was not its purpose that all persons holding office at the ratification of the new instrument should continue in the exercise of the duties thereof according to their respective commissions or appointments and until their successors should be appointed. The words "unless by this Constitution otherwise provided," would not have been added had it not been a fact that there were exceptions to the general rule established by the section, and it is plain that these exceptions were to be found in the Constitution, and it seems plain that the Commissioner of Lands and Immigration was such an exception.

The 29th section of the Executive Article provides that the salary of the Commissioner of Agriculture shall be fifteen hundred dollars. The meaning of this is that the person holding the office of Commissioner of Agriculture at any time should be paid at the rate of fifteen hundred dollars per annum, and it was as applicable to the person who assumed that office in January, 1887, on the Constitution becoming operative as to anyone subsequently elected to it. That the duties of the office would be less before the Legislature should act, or before the term of the then Adjutant-General should expire, affected neither the requirement of the Constitution that the office should be assumed by the person specified in Section 8 of the schedule, nor the amount of his pay. A provision in a Constitution for the pay of an officer must be intended for the occupant of the office of the same name, and which the Constitution expressly provides shall be assumed or occupied at a period which cannot be postponed beyond the time the instrument first became operative.

Two reasons are urged why the 8th section of the schedule may not mean that the Commissioner of Lands and Immigration should assume the office of Commissioner of Agriculture. The first is, that supervision of the State Prison is given to him by the 26th section of the Executive Article, while this function really remains in the Adjutant-General by virtue of the provision of the 16th section of the same article, that this Constitution shall work no vacancy in the office of Adjutant-General as now constituted until the expiration of the present term. The second reason is, that until the Legislature could or might act the Commissioner of Agriculture could have no "duties in relation to agriculture." Admitting both of these assumptions to be correct, there is in them nothing that conflicts with the requirement of the specified section of the schedule, that the *office* of Commissioner of Agriculture should be assumed. He was to take the office whatever its duties were. If the effect of the proviso mentioned was to retain in the office of Adjutant-General until the expiration of the term referred to the duty of supervising the State Prison, and consequently preclude the exercise of this function by the Commissioner of Agriculture, all that can be said of this is, that it rendered inoperative the provision for the exercise of such duties by the Commissioner of Agriculture until the expiration of the pending term of the Adjutant-General, as the power of the Senate to elect a permanent President was superseded by the Constitution for the pending term of the office of Lieutenant-Governor, whose function it was to preside over that body.

That no duties "in relation to agriculture" could be prescribed by law for the office until the Legislature should meet, must be assumed to have been as well known to the framers of the Constitution and the people who ratified it as

anything else was, yet knowing it, the former framed and the latter ratified the provision that the Commissioner of Lands and Immigration should assume the office of Commissioner of Agriculture, whose only duties, according to the argument, were the "supervision of all matters pertaining to the public lands and keeping the Bureau of Immigration."

When the Constitution says, as it does, in the 17th section of the Executive Article, that the Governor and the administrative officers of the Executive Department shall constitute a Board of Commissioners of State Institutions, which Board shall have supervision of all matters connected with such institutions in such manner as may be prescribed by law, it means, and also meant upon going into effect, by "administrative officers of the Executive Department," the officers named in the 20th section of the same article, *supra*. Among these was the Commissioner of Agriculture, which officer the former Commissioner of Lands and Immigration was to become by assuming that "office," whatever its duties might be, and the Commissioner of Agriculture was one of the officers meant by the tenth section of the 16th article, when it said the "administrative officers of the Executive Department shall keep their offices at the seat of government."

It is true that the Legislature of 1887 appropriated for that year and for the year 1888 enough moneys for salaries for the "Administrative Department" to permit the payment to relator of a salary of $2,000 per annum, if he is entitled to it, but not only is it not true that the act making the appropriation does not recognize or speak of the officer as Commissioner of Lands and Immigration, but on the other hand it is true that another statute, the Railroad Commission Act, passed at the same session, does mention and recognize the "Commissioner of Agriculture" as an officer of

the State by making him one of the Board of Revisors under that act. We fail to find in the legislation of that year any recognition of the Commissioner of Lands and Immigration as an existing office. Considering the appropriation act and the Railroad Commission statute together, the only conclusion to be drawn is that the Legislature regarded the Commissioner of Agriculture as the existing office, and that it was to him the two thousand dollars should be paid, if from so general an appropriation it can be said a legislative construction of his being entitled to this amount can be inferred. Such a construction by the Legislature is in direct antagonism to the express language of the Constitution that the salary of the Commissioner of Agriculture shall be fifteen hundred dollars.

The judgment of the Court will be that the respondent go without day and recover his costs to be taxed by the Clerk. Tucker vs. Justices, 1 Jones 451 ; High on Extraordinary Remedies, 526; State *ex rel.* vs. Edwards, 22 Fla., 364, 370.

Judge Walker not concurring. He filed no opinion.