County Coms. Escambia Co. v. Pilot Coms.—Syllabus.

THE BOARD OF COUNTY COMMISSIONERS OF ESCAMBIA COUNTY, PLAINTIFFS IN ERROR, v. THE BOARD OF PILOT COMMISSIONERS OF THE PORT OF PENSACOLA, FLORIDA, DEFENDANTS IN ERROR.

1. The Legislature can not authorize the payment for other than county purposes, of money derived from taxes assessed and imposed by a county, since such authority would be in conflict with the manifest purpose and intention of the constitutional provision that "the Legislature shall authorize the several counties * * * in the State to assess and impose taxes for county * * * purposes, and for no other purposes."

2. It is the duty of the courts to construe legislative acts with reference to the constitution, and if the constitution is clearly violated by a provision of a statute, such provision should be declared inoperative; but, if the provision is not clearly in conflict with the constitution, or if there is a well founded or reasonable doubt as to the constitutionality of the provision the legislative will as expressed therein should be sustained.

3. Whether an expenditure demanded to be made from the funds derived by a county from taxes assessed and imposed by it by virtue of legislation under the constitution, is or is not for a county purpose, is to be determined by the courts from the facts and circumstances of each particular case; but when an expenditure is authorized by the legislature as being a county purpose, the courts will not interfere except in case free from all reasonable doubt.

4. Where a county purpose has been designated by a statute which directs that expenses incurred by certain officers for the protection of ports, harbors, bays and rivers within the county, shall be audited and paid by the county commissioners as other charges against the county are audited and paid, such designation of a county pur-

pose will, in deference to the legislative department, be recognized and enforced by the courts unless it clearly appears that it is not a county purpose within the meaning of the constitution.

5. If the payment demanded of a county is for a county purpose, the particular officers engaged and methods used under a statute in incurring the expenditure do not affect its character as a county purpose.

6. A river, harbor or bay of a port is a public highway, useful to the people of the county in which it is situated for the purposes of navigation and commerce. The depth of the water therein is one of the chief elements of its value, and its protection from injury by being filed in, is within the purposes for which county governments are established, even though the river, harbor or bay be also and largely used for passage to and from, and for commerce with, points beyond the county.

7. It is competent for the State acting through the counties to protect the ports, harbors, bays and rivers therein if the control of the general government within its sphere is not thereby interfered with.

8. Under the constitution the powers and duties of the county commissioners are prescribed by statute and the statute does not give them exclusive police or other supervision over the ports or harbors of the State. The legislature may provide for the exercise of such powers within a county by officials other than the county commissioners.

9. Section 950 of the Revised Statutes of 1892, Section 1302 of the General Statutes of 1906, which requires the Board of Pilot Commissioners of each port to take such steps as are necessary to detect any violation within their jurisdiction of the laws for the protection of ports, harbors, bays and rivers, and requires the county commissioners to audit and pay the expenses so incurred by the Board of Pilot Commissioners, as other charges

against the county are audited and paid, is a valid enactment for the purposes therein stated.

10. The constitution does not require that the Legislature shall impose a limitation upon expenditures incurred for county purposes, and in the absence of such a limitation the Legislature has plenary power within proper county purposes.

11. Under Section 950 of the Revised Statutes of 1892, Section 1302, of the General Statutes of 1906, the necessity for incurring expenses in detecting any violation of the law for the protection of ports, harbors, bays and rivers is to be determined by the Board of Pilot Commissioners and no duty with reference thereto is imposed upon the county commissioners except that of auditing and paying for such expenses.

12. The fact that the greater part of a port or harbor is within the corporate limits of a city and is under the protection of the police department of the city, does not relieve the county of its powers and duties with reference to the protection of the port or bay or harbor within its territory.

13. Even if a harbor lies within the corporate limits of more than one county and is under the police protection of both counties, the State is not thereby precluded from providing for the protection of the portion of the harbor in one of such counties at the expense of the county.

14. When an expenditure by a county is authorized by a valid law and the correctness of the amount due by the county is ascertained and approved as the law directs, there being no question as to *bona fides*, it is the duty of the county commissioners to audit, approve and pay the same, and such payment may be enforced by mandamus.

This case was decided by Division A.

Writ of error to the Circuit Court for Escambia County.

## STATEMENT.

On February 3rd, 1906, an alternative writ of mandamus was issued, as follows:

"In Escambia County Circuit Court, State of Florida. The Board of Pilot Commissioners vs. The Board of County Commissioners of Escambia County, Florida.

To A. M. Avery, W. J. Sennott, J. M. Andrews, J. A. Wiggins and J. R. Steward, as County Commissioners of Escambia County, Florida, and to the Board of County Commissioners, of Escambia County, Florida.

Whereas, the Board of Pilot Commissioners of and for the port of Pensacola, Florida, have made it appear to this court that because it has from time to time been informed that the harbor of Pensacola is being shoaled and destroyed by the deposition therein by steamships, vessels and individuals, of ashes and ballast and other materials, said board, by virtue of authority in them vested and in accordance with the provisions of Section 950 of the Revised Statutes of Florida, on the 5th day of February, A. D. 1906, employed one Walter Everett as Harbor Policeman, to detect any and all violations in the port of Pensacola and the waters thereof of Section 936 of the Revised Statutes of Florida, said employment of the said Everett dating from February 5th to February 12th, 1906, at a salary of $2.50 per day;

And that the said Everett had entered upon the performance of his duties as Harbor Policeman aforesaid and had performed said duties from the 5th day of February, 1906, until and including the 12th day of February, 1906, and had rendered a bill to said Board of Pilot Commissioners for said services, for the sum of $17.50,

which said bill is hereto attached marked Exhibit "A" and made a part hereof.

And the said Board of Pilot Commissioners had thereupon approved said bill and did, on the 12th day of February, 1906, through their secretary, R. M. Cary, transmit said bill with the approval of their president, I. H. Aiken, endorsed thereon, to said Board of County Commissioners of Escambia County, Florida, and request them to audit and pay the same, in accordance with the provisions of Section 950 of the Revised Statutes of Florida, as appears by letter from said R. M. Cary, secretary as aforesaid, which is hereto attached, marked Exhibit "B," and made a part hereof.

And that you, the said County Commissioners, did, on the 14th day of February, 1906, at a meeting of your said board, duly and legally called and held, decline and refuse to audit and pay the said bill.

Now, therefore, this is to command you that you be and appear before this court, at Marianna, Florida, on the 7th day of March, A. D. 1906, and show cause, if any you have, why a peremptory writ of mandamus should not issue against you requiring you to audit and pay the said bill.

Witness my hand and the seal of this court this 26th day of February, A. D. 1906.

FRANCIS B. CARTER."

Pensacola, Fla., February 12th, 1906.

Board of Pilot Commissioners, Pensacola, Fla., to Walter Everitt, Dr., for services as Harbor Police from Feb'y 5th to Feb'y 12th, 1906, seven days at $2.50, $17.50.

Approved, I. H. AIKEN,

(Exhibit "A.")    President.

Pensacola, Fla., Feb'y 12th, 1906.
County Commissioners of Escambia County, Florida,
    Care of Mr. A. M. McMillan, City.

Dear Sirs: Enclosed please find bill of Walter Everitt for $17.50 for services as Harbor Police, approved by the President of the Board of Pilot Commissioners, which please audit and pay.

Yours very truly,
                            R. M. CARY,
            Sec'ty Board of Pilot Commissioners.


(Exhibit "B.")

Pensacola, Fla., Feb'y 14th, 1906.
Mr. R. M. Cary, Pensacola, Fla.

Dear Sir: I return herewith the enclosed bill of Walter Everitt against the Board of Pilot Commission-.ers, same having been presented to the Board of County Commissioners and payment declined on the grounds that it is not a claim against this county.

Yours very truly,
                        A. M. McMILLAN,.
        Clerk Board of County Commissioners.


On March 5th, 1906, the following demurrer was filed:

"Respondents, A. M. Avery, W. J. Sennott, J. M. Andrews, J. A. Wiggins and J. R. Steward, as the Board of County Commissioners of Escambia County, Florida, 1 their attorney, demur to the alternative writ of mandamus herein, and for cause of demurrer say:

1. Because the said account sought to be enforced against said county of Escambia by the said Board of Pilot Commissioners is not authorized by law.

2. Because the said account of Pilot Commissioners so rendered against said county of Escambia is not for a county purpose.

3. Because the said act under which the Pilot Commissioners seek to charge the county of Escambia with liability for policing the harbor of Pensacola is unconstitutional and void, in that it seeks to delegate powers to the Board of Pilot Commissioners that under the Constitution and Laws of Florida belong solely to the Board of County Commissioners of Escambia County, Florida.

4. Because in and by the act under which the petitioners seek to charge the county with liability for policing the harbor of Pensacola, no provision is made for the estimate of the cost of the said policing establishment to be submitted to the Board of County Commissioners by the said Pilot Commissioners.

5. Because in and by Section 950 of the Revised Statutes of Florida, the said Board of Pilot Commissioners are substituted for, and clothed with powers belonging solely to, the Board of County Commissioners of Escambia County, Florida.

6. Because in and by said Section 950 of the Revised Statutes of Florida, no limitation of cost or of expenditure for establishment of a police service for said harbor, is fixed."

On March 21st, 1906, the following answer was filed:

"Subject to demurrers filed herein, respondents file the following answer:

The respondents, A. M. Avery, W. J. Sennott, J. M. Andrews, J. A. Wiggins and J. R. Steward as the Board

of County Commissioners of Escambia County, Florida, for answer to the alternative writ of mandamus issued herein and returned herewith, say:

1. That these respondents deny the necessity for the employment of said Walter Everitt or of any one for the purpose of detection of the violations in the port of Pensacola and the waters thereof, of the law as alleged, and as reasons for such denial assign the reasons set forth in the 3rd, 6th and 7th paragraphs.

2. These respondents further answering, say that in refusing the payment of the bill of Walter Everitt, as alleged in the petition herein, they exercised their best judgment and discretion.

3. These respondents further answering, say that the United States Government has taken charge of the harbor or port of Pensacola, and the same is under the immediate supervision and protection of the officers of the United States in charge of river and harbor improvements and the assistant engineers employed under them; the United States Collector of Customs, his deputies, the revenue officers of the United States; of the United States Marshal and his deputies; the United States having and maintaining at said port a full complement of said officers, with boats, officials and men, with their duties fixed and defined by law, for the patrol and protection of said harbor from the violation by persons or corporations, vessels, steamships, barges, or other craft, of the laws of the United States for the protection of harbors and navigable waters.

4. These respondents further answering say, that the port or harbor of Pensacola is within the body of the

counties of Escambia and Santa Rosa, State of Florida; that the Board of Pilot Commissioners, petitioners herein, is composed of citizens of Escambia and Santa Rosa counties, State of Florida, and by the alternative writ of mandamus herein it seeks, by compelling the payment of the account for the employment of one Walter Everitt, to impose a liability upon the county of Escambia, without in anywise including the county of Santa Rosa of said State in said liability.

5. Respondents further answering say that in and by said alternative writ of mandamus there is no crime alleged to have been detected by the said employee or of prosecution begun or had by said employee or the Pilot Commissioners, for whose service the account is sought to be charged.

6. These respondents further answering, say that the harbor of Pensacola where vessels lie at anchor, and where the police duty is said to have been performed, in the greater part, is within the jurisdiction and corporate limits of the city of Pensacola, and under the protection of the police department of said city, with their duties fixed and defined by the ordinances of the said city for the protection of said harbor.

7. Respondents further answering, say that the harbor of Pensacola where vessels lie at anchor or are moored, and where said police duty for which the county of Escambia is sought to be charged, was performed, is within the corporate limits of Escambia and Santa Rosa counties, and under the protection and surveillance of the respective sheriffs and their deputies of said counties.

Wherefore, these respondents pray that by reason of the

206    SUPREME COURT OF FLORIDA.

County Coms. Escambia Co. v. Pilot Coms.—Statement of Case.

facts hereinbefore alleged, they should be dismissed with their reasonable costs."

On March 23rd, 1906, the following demurrer to the answer was filed:

"The petitioners demur to the answer of the respondents and to each and every paragraph thereof, and for grounds of demurrer say:

1. That the first paragraph is bad: (A) Because it sets forth a conclusion of law; (B) Because it is vague, indefinite and uncertain and does not set forth any facts showing lack of necessity for the employment of Everitt.

2. That the second paragraph is bad, because the statute under which the petitioners acted does not contemplate the exercise of judgment and discretion by the County Commissioners.

3. That the third paragraph is bad, because it does not show that the jurisdiction of the State of Florida is not sufficient to authorize the passage of the act in question.

4. That the fourth paragraph of the answer is bad, because it fails to set forth facts showing that the County Commissioners of Escambia County are not required to pay the account in question.

5. That the fifth paragraph of the answer is bad, because the statute of the State of Florida under which the bill in question was rendered to the County Commissioners does not require as a prerequisite that any crime should have been detected.

6. That the sixth paragraph of the answer is bad: (A)

Because the jurisdiction of the city of Pensacola is not exclusive of the jurisdiction of the State; (B) Because it shows upon its face that at least a part of the harbor of Pensacola, where vessels lie at anchor, is not within the jurisdiction and corporate limits of the city of Pensacola.

7. That the seventh paragraph of the answer is bad, because the bill in question was rendered under a special statute making it the duty of the Pilot Commissioners to detect violations of the statute."

On March 24th, the following order was made:

"This cause coming on to be heard on the demurrer to the alternative writ of mandamus and on the demurrer of the petitioners to the answer of the respondents—after argument of counsel for the respective parties and after considering the pleadings—it is ordered that the demurrer to the alternative writ be and is hereby overruled and that the demurrer to answer of the respondent be and is hereby sustained—and that the respondent be given until rule day in April, 1906, within which to plead further if they are so advised.

Done at Pensacola, this March 24th, 1906.

FRANCIS B. CARTER, Judge."

On April 24th, 1906, the following peremptory writ of mandamus was issued:

"To A. M. Avery, W. J. Sennott, J. M. Andrews, J. A. Wiggins and J. B. Stewart, as County Commissioners of Escambia County, Florida:

Whereas, heretofore, to-wit: on the 26th day of February, A. D. 1906, an alternative writ of mandamus was is-

sued out of this court, commanding you to show cause, if any of you might have, why a peremptory writ of mandamus should not issue against you, requiring you to audit and pay the bill of Walter Everitt, as harbor policeman, which as alleged in said alternative writ, has been approved by the Board of Pilot Commissioners and forwarded to you for auditing and payment; and whereas you, through your attorney, filed a demurrer to said alternative writ, which, in the opinion of this court, was not well taken; and, whereas, you also filed an answer to the said writ on the ...... day of ........, A. D. 1906, which, in the opinion of this court, was not sufficient in law;

Now, therefore, this is to command you, individually and as constituting the Board of County Commissioners of Escambia County, Florida, to audit and pay the said account of the said Everitt, amounting, as alleged in said alternative writ, to seventeen and 50-100 ($17.50) dollars, together with the costs of these proceedings, on or before the 15th day of May, A. D. 1906.

Witness, my hand and the seal of this court, at Pensacola, Florida, this 24th day of April, A. D. 1906.

FRANCIS B. CARTER, Judge."

A writ of error was taken by the County Commissioners, and the following errors are assigned:

"1. That the court erred in overruling respondents' demurrers to petitioners' petition filed March 5, 1906.

2. That the court erred in sustaining petitioners' demurrers to respondents answer filed March 21, 1906.

3. That the court erred in entering final judgment against respondents by the writ of mandamus made and issued April 24, 1906."

*R. Pope Reese,* for Plaintiffs in Error.

*Blount & Blount,* for Defendants in Error.

WHITFIELD, J. *(after stating the facts)* : Section 5 of Article IX of the Constitution ordains that "The Legislature shall authorize the several counties * * * in the State to assess and impose taxes for county * * purposes, and for no other purposes."

Section 5 of Article VIII of the Constitution as amended in 1899, provides that "The powers, duties and compensation of * * * County Commissioners shall be prescribed by law."

Section 578 of the Revised Statutes makes it the duty of the County Commissioners to "maintain * * * any * * * highway in their respective counties" and "to approve all accounts against the counties." Other sections provide that the County Commissioners shall issue warrants on the County Treasurer to pay claims against the county from county funds in his hands.

Section 438 of the Revised Statutes as amended by Chapter 4171, acts of 1893, provides that "The Governor, by and with the advice and consent of the Senate, shall appoint a Board of Pilot Commissioners for each port in this State, to consist of five members, who shall have their offices for four years, unless sooner removed by the Governor; the said board is to consist of citizens of said

14—S. C.

port, and the said commissioners shall be empowered to act as Port Wardens and to perform all the duties of the same. They shall take the usual oath of office."

Section 936 of the Revised Statutes of 1892, as amended by Chapter 4370, acts of 1895, provides that "It shall not be lawful for any person to discharge or cause to be discharged, deposit or cause to be deposited, in the tide or salt waters of any bay, port, harbor or river of this State any ballast or material of any kind other than clear stone or rock free from gravel or pebbles, which said clear stone or rock shall be deposited or discharged only in the construction of enclosures in connection with wharves, piers, jetties, or in the construction of permanent bulkheads connecting the solid and permanent portions of wharves."

Section 950 of the Revised Statutes provides that "The Board of Pilot Commissioners of each port shall take such steps as may be necessary to detect any violation in their port or waters within their jurisdiction of the laws for the protection of ports, harbors, bays and rivers; and they shall cause complaint to be made for the arrest of every offender against such laws. And the County Commissioners of the county in which such Pilot Commissioners are appointed shall audit and pay the expenses of the Board of Pilot Commissioners, which shall be incurred under this Section, as other charges against the county are audited and paid."

It is urged that the expenses incurred by the Board of Pilot Commissioners under Section 950 of the Revised Statutes in detecting violations of the laws for the protection of ports, harbors, bays and rivers are not for a county purpose and are therefore not a valid charge

upon the county; and that the requirements of said section that the County Commissioners shall audit and pay such expenses as other charges against the county are audited and paid, is not valid because the expenses are those incurred by the Board of Pilot Commissioners in the exercise of powers belonging solely to the County Commissioners, and because no provision is made by the act for the estimate of such expenses to be submitted to the County Commissioners by the Board of Pilot Commissioners.

Under Section 5 of Article IX of the Constitution, the Legislature cannot authorize the counties to assess and impose taxes except for county purposes; and legislative direction to pay out for other than county purposes money derived from taxes assessed and imposed by a county would be in conflict with the manifest purpose and intention of the mentioned constitutional provision. It is the duty of the courts to construe legislative acts with reference to the constitution, and if the constitution is clearly violated by a provision of a statute such provision should be declared inoperative; but if the provision is not clearly in conflict with the constitution, or if there is a well founded or reasonable doubt as to the constitutionality of the provision the legislative will as expressed therein should be sustained. Whether an expenditure demanded as to be made from the funds derived by a county from taxes assessed and imposed by it by virtue of legislation under the constitution, is or is not for a county purpose, is to be determined by the courts from the facts and circumstances of each particular case; but when an expenditure is authorized by the Legislature as being a county purpose, the courts will not interfere except in cases free from all reasonable doubt. When a county pur-

pose has been designated by a statute which directs that expenses incurred by certain officers for the protection of ports, harbors, bays and rivers within the county, shall be audited and paid by the County Commissioners as other charges against the county are audited and paid, such designation of a county purpose will, in deference to the legislative department, be recognized and enforced by the courts unless it clearly appears that it is not a county purpose within the meaning of the Constitution. If the payment demanded of a county is for a county purpose, the particular officers engaged and methods used under a statute in incurring the expenditure do not affect its character as a county purpose. A river, harbor or bay of a port is a public highway, useful to the people of the county in which it is situated for the purposes of navigation and commerce. The depth of the water therein is one of the chief elements of its value, and its protection from injury of being filled in, is within the purposes for which county governments are established, even though the harbor or bay be also and largely used for passage to and from, and commerce with, points beyond the county. It is competent for the State acting through the counties to protect the ports, harbors, bays and rivers therein if the control of the general government within its sphere is not thereby interfered with. See Cotton v. County Commissioners of Leon County, 6 Fla. 610; Stockton v. Powell, 29 Fla. 1; 10 South. Rep. 688; County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; Skinner v. Henderson, 26 Fla. 121, 7 South. Rep. 464; President and Commissioners, etc., v. State ex rel. Board, etc., 45 Ala. 399.

The alternative writ alleges that the Board of Pilot Commissioners for the port of Pensacola, Florida, has

from time to time been informed that the harbor of Pensacola is being shoaled and destroyed by the deposition therein by steamships, vessels and individuals, of ashes and ballast and other materials; that said board under Section 950 of the Revised Statutes of Florida employed one harbor policeman to detect any and all violations in the port of Pensacola and the waters thereof of Section 936 of the Revised Statutes. That section makes it unlawful for any person to discharge or cause to be discharged, deposit or cause to be deposited, in the tide or salt waters of any bay, port, harbor or river in the State, any ballast or material of any kind other than clear stone or rock free from gravel or pebbles used under authority of law for improving the harbor.

It is clearly within the power of the State to make provision for the protection of its ports and harbors by preventing the filling in of waters used for navigation and commerce, and it may do this through officers of the county or otherwise. When such port or harbor is within a county it is competent for the Legislature to impose upon the county the burden of protecting such harbor or port, since it affords a means of carriage and commerce, useful to the people of the county, and is within the purposes for which county governments are established. The fact that the protection is to be had under the direction and control of officers other than the County Commissioners does not affect its character as a county purpose. Under the constitution the powers and duties of the County Commissioners are prescribed by statute. The statute does not give them exclusive police or other supervision over the ports or harbors of the State and the Legislature may provide for the exercise of such powers within a county by officials other than the County Commissioners. The

Board of Pilot Commissioners are given no power to assess or impose taxes or to pay out county funds, but only to supervise the protection of the harbors, the expenses of which are to be paid by the County Commissioners from county funds.

The Constitution does not require that the Legislature shall impose a limitation upon expenditures incurred for county purposes, and in the absence of such a limitation the Legislature has plenary power within proper county purposes. See Board of Supervisors of Sangamon County v. City of Springfield, 63 Ill. 66.

The respondents urge that the demand is not a proper charge against the county, (1) because there was no necessity for the employment of the harbor policeman, for the reason that the United States government had charge of the harbor or port of Pensacola, and through its officers furnish patrol and protection of said harbor from violations of the laws of the United States for the protection of harbors; (2) because the greater part of the harbor of Pensacola is within the city of Pensacola and under its police protection; (3) because the harbor of Pensacola is within Escambia and Santa Rosa counties and under their police protection; and further that the County Commissioners have exercised their best judgment and discretion in refusing payment, the port or harbor being in Escambia and Santa Rosa counties and the expense having been incurred by the Board of Pilot Commissioners composed of citizens of Escambia and Santa Rosa counties without including Santa Rosa county in the liability, and no crime is alleged to have been detected or prosecution begun as the result of the service rendered.

The statute requires the Board of Pilot Commissioners to take such steps as may be necessary to detect any vio-

lation of the laws for the protection of ports, harbors, bays and rivers, and the County Commissioners are required to audit and pay the expenses so incurred as other charges against the county are audited and paid. Under this statute the necessity for incurring expenses in detecting any violations of the law for the protection of ports, harbors, bays and rivers is to be determined by the Board of Pilot Commissioners, and no duty with reference to it is imposed upon the County Commissioners except that of auditing and paying for such expenses. The statute gives no warrant for the exercise of judgment and discretion in the matter by the County Commissioners. The judgment of the County Commissioners as to the necessity for local protection of a harbor or port, or that such protection will conflict with the authority of the United States, acting within its proper sphere, is not material when the statute makes it their duty to pay the expenses incurred under a statute for a county purpose. If it be that a portion of the port or harbor is within another county, and that the Board of Pilot Commissioners is composed of citizens of both counties, such facts furnish no ground for the refusal by the County Commissioners to obey the plain mandate of a valid statute. The statute provides that steps shall be taken to detect violations of the law and that the expenses hereof shall be paid by the county. A criminal prosecution or the actual detection of a crime is not a prerequisite to the expenditures provided for. If it be true that the greater part of the port or harbor is within the corporate limits of the city of Pensacola and under the protection of the police department of the city, the county is not thereby relieved of its powers and duties with reference to the protection of the port or bay or harbor within its territory. Even if the harbor of Pensacola lies

within the corporate limits of the counties of Escambia and Santa Rosa, and is under the police protection of such counties, the State is not thereby precluded from providing for the protection of the portion of the port, bay or harbor within Escambia county at the expense of such county.

When an expenditure by a county is authorized by a valid law and the correctness of the amount due by the county is ascertained and approved as the law directs, there being no question as to bona fides, it is the duty of the County Commissioners to audit, approve and pay the same, and such payment may be enforced by mandamus.

The demurrer to the alternative writ was properly overruled, and there was no error in sustaining the demurrer to the answer.

The award of the peremptory writ of mandamus is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.