STATE, *ex rel.* ROSE E. SIMMONS, as Executrix, etc., v. J. M. LEE, as Comptroller.

160 So. 886.
Division A.
Opinion Filed April 3, 1935.

*Edwin C. Coffee, Julian E. Fant, C. C. Bailey, Albion W. Knight, H. P. Adair,* and *A. W. Cockrell, Jr.,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* for Respondents.

*Knight, Thompson & Turner; Shackleford, Ivy, Farrior* and *Shannon; Macfarlane, Jackson, Hansbrough & Ferguson; Loftin, Stokes & Calkins; Evans, Merson & Sawyer,* and *James M. Carson,* as *amici curiae.*

WHITFIELD, C. J.—An alternative writ of mandamus issued by this Court in substance alleges that under the pro-

vision of the Constitution that "the Legislature may prescribe the compensation of the Justices and Judges of the several courts" the Legislature in 1921 by Chapter 8480, enacted that "the salaries of the Circuit Judges shall be the sum of Five Thousand Dollars per annum"; and at the same session the Legislature enacted into law Senate Bill No. 517, which in effect provides that in judicial circuits containing a county "having a population of more than one hundred thousand according to the latest Federal census," each Judge of such circuits shall be paid each year by the counties in the circuit an additional sum sufficient in amount to make the total salary of each such Circuit Judge the sum of six thousand dollars per annum; that such additional amounts were so paid until the salaries of Circuit Judges were by statutes fixed at, and while they continued to be fixed at or in excess of, six thousand dollars each per annum; that by Chapter 15859, it is provided that the annual salary of each Circuit Judge shall be $5,000.00 beginning July 1, 1933;

"That by virtue of the laws of Florida there should have been budgeted for and paid out of the general revenue of Duval County to Daniel A. Simmons as a circuit judge of Duval County an additional sum sufficient in amount to make his total salary the sum of $6,000 per annum, to-wit, at the rate of $1,000 per annum from July 1, 1933, until his death in May, 1934, and as finally calculated and fixed by the resolution of the Duval County Board of County Commissioners of said county and expressly concurred in by the Duval County Budget Commission that additional sum so payable to him is $873.97.

"That neither said additional sum nor any part thereof was paid, and the relator duly requested payment thereof; that request made in writing was embodied in the resolution

adopted by said Board at its session October 10th, 1934, duly authorizing, pursuant to Chapters 14678, and 15610 adopted in 1931, the transfer of said sum from the appropriation in the Duval County General Fund entitled "Emergency Fund" into an appropriation in the general fund for such additional compensation provided for by said general law (Senate bill 517) of 1921.

"That said Board's resolution making said transfer, pursuant to said request therefor therein set forth, was concurred in by the resolution of the Duval County Budget Commission recorded in its minutes, and forthwith said resolutions so adopted, concurred in and recorded were, as duly certified, transmitted October 10, 1934, to and for the approval of J. M. Lee as the Comptroller of the State of Florida; and that in the event of said approval, forthwith said sum of $873.97 in bank ready for the purpose would be paid to the relator pursuant to law and said resolutions.

"That the said Comptroller under date October 13, 1934, transmitted in writing to the chairman of said Duval County Budget Commission the refusal of said Comptroller to approve said transfer, apparently basing his refusal to approve on the proposition that the general Act of 1933, prescribing salaries of various officers, to-wit, Chapter 15859, confines the salaries of each of the circuit judges for Duval County to the sum of $5000; and that said J. M. Lee as Comptroller continues to withhold his approval.

"That said indebtedness to the relator continues to exist unpaid, that said money continues in bank available for payment, that all things have happened and been done in due season and duly evidenced to justify and require said approval by said Comptroller of said transfer; and that, solely

because of the fact that said transfer is not so approved, relator is prevented from receiving said sum."

The alternative writ commanded the respondent to "forthwith approve in writing said transfer or show cause" for not doing so.

Respondent moved to quash the alternative writ on the following grounds:

"(1) There is no clear legal duty devolving upon respondent in relation to the command of said alternative writ.

"(2) The alternative writ of mandamus undertakes to control the discretion vested in respondent under Chapter 14678, Acts of 1931, as amended by Chapter 15610, Laws of Florida, Acts of 1931.

"(3) The command of the alternative writ violates Sections 5 and 9 of Chapter 14678, Laws of Florida, Acts of 1931.

"(4) Compliance with the command of the alternative writ for the purpose therein stated would be violative of Section 42 of Article 5 of the Constitution of Florida.

"(5) Compliance with the command of the alternative writ for the purpose therein stated would be violative of Chapter 15859, Laws of Florida, Acts of 1933.

"(6) It appears from the allegations of the alternative writ of mandamus that no provision was made in the budget prepared by the Budget Commission of Duval County for the fiscal year 1933-1934 for the payment of any salary to the late Daniel A. Simmons as Circuit Judge for Duval County, Florida, under or pursuant to Senate Bill 517 of the Legislative Acts of 1921."

Chapter 15934, Acts of 1933, requires a copy of the budget prepared by the County Budget Commission to be sent to the Comptroller of the State of Florida, and enacts that it shall be unlawful to transfer money from one fund

to another or to make payments from funds except as fixed by the budget:

"Provided, however, that such transfers or payments may be made if requested by resolution adopted by the Board or officer charged with the expenditure of such fund or item requesting authority therefor, which resolution must be expressly concurred in by resolution of the County Budget Commission recorded in its minutes and approved by the Comptroller of the State of Florida in writing."

The approval of the State Comptroller as required by the quoted statute is essential to a transfer of county funds under the budget statute. It is not contemplated by the statute that such approval by the Comptroller will be given as a matter of course and without consideration as to its legality and propriety. The statute does contemplate that the Comptroller shall in the exercise of a sound administrative discretion, approve a transfer when it is to accomplish a duly authorized and proper purpose.

There being no question of policy or of integrity of purpose, if the contemplated transfer of county funds is for the purpose of properly making a payment that is by law required to be made, the discretion of the Comptroller in approving or refusing to approve the transfer of county funds should be governed by the law as it is judicially interpreted.

The alternative writ in effect alleges that the refusal of the Comptroller to approve the transfer is apparently based on the proposition that the statute under which the claim of payment is asserted, is not now in force.

In view of the responsibility of the Comptroller in the premises, and of the fact that the validity and interpretation of the Act of 1921 had not been authoritatively determined, the Comptroller may have based his refusal to approve the transfer of the county funds upon the theory that the Act

of 1921 does not authorize the payment contemplated by the transfer of county funds. Such refusal requires the legality and applicability of the statute to be duly adjudged before payment under it can be made in due course.

The Act of 1921 alone, if valid and applicable, can require the demanded payment to be made if the transfer of county funds is duly made. If the Act is duly adjudged to require the demanded payment to be made, then it is the plain duty of the Comptroller to approve the transfer of the county funds under the budget law, so that the payment can be properly made if required by the Act of 1921.

And the law contemplates that the Comptroller will approve the transfer when the payment to be made pursuant to the transfer is required by law, no question of the correctness of the claim being involved.

If the statute is held to be constitutional and to require the payment to be made as demanded, there is then no room for the exercise of administrative judgment or discretion as to the validity or effect of the statute, but a plain duty to approve the transfer. In such case the Comptroller has no responsibility, for when the law is determined by the Court, the Constitution requires the law as judicially interpreted to be executed.

The statute referred to as the Act of 1921, and as Senate Bill No. 517, was enacted by the Legislature in 1921. It was vetoed by the Governor, but such veto was made the day after the Act became a law; so the veto was ineffectual and the Act remains a law unless it has been repealed or superseded. See Croeisant v. DeSoto Imp. Co., 87 Fla. 536, 101 So. 37.

In adjudicating the validity and applicability of the Act of 1921 Senate Bill No. 517, other organic and statutory provisions must be considered.

The Constitution of 1885 provided by Section 9, Article V:

"The salary of the Justices of the Supreme Court shall be three thousand dollars a year. The salary of each Circuit Judge shall be two thousand five hundred dollars a year."

Section 8 of Article V as amended in 1902 provided that: "The salary of each Circuit Judge shall be two thousand, seven hundred and fifty dollars."

Section 1 of Article V as amended in 1914 provides that: "The Legislature may prescribe the compensation of the Justices and Judges of the several courts."

Section 42 of Article V, adopted in 1912, provides for another Circuit Judge for Duval County who "shall receive the same salary and allowances for expenses as other Circuit Judges, but the same shall be paid by the county of Duval out of the general revenue of said county."

Section 43 of Article V, adopted in 1922, provides for additional Circuit Judges who "shall receive the same salary and allowance for expenses os other Circuit Judges."

Chapter 8480, Acts of 1921, fixed the salary of each Circuit Judge to be paid by the State at five thousand dollars per annum.

Senate Bill No. 517, Acts of 1921, provides that:

"Section 1. Each Judge of the Circuit Court of a County having a population of more than one hundred thousand according to the latest Federal census shall continue to receive the salary and allowances for expenses otherwise provided by law from time to time to be paid to each of the Circuit Judges of this State, and in addition he shall be paid each year, out of the general revenue of such county, an additional sum sufficient in amount to make his total salary the sum of Six Thousand Dollars per annum. In event that such Judge is Judge of the Circuit Court of more than one

such county, each of such counties shall pay to such Judge, out of its general revenue, an equal portion of such additional sum. * * *

"Section 2. All payments herein provided to be made by counties hereunder are hereby declared to be payments of money for county purposes."

Chapter 11335, Acts of 1925, fixed the annual salary of each Circuit Judge at $6,000.00.

Chapter 11888, Acts of 1927, fixed the salary of the Circuit Judges at seven thousand five hundred dollars per annum.

Chapter 15720, Acts of 1931, fixed the salary of the Circuit Judges at six thousand seven hundred and fifty dollars per annum.

Chapter 15859, Acts of 1933, fixed the salaries of the Circuit Judges at five thousand dollars.

By reducing the salary of Circuit Judges from six thousand seven hundred and fifty dollars under Chapter 15720, to five thousand dollars under Chapter 15859, Acts of 1933, the Legislature did not repeal the Act known as Senate Bill No. 517, Acts of 1921, by which counties in a stated class of Judicial Circuits were required to supplement the salaries of Circuit Judges in such Judicial Circuits to the total limit of six thousand dollars per annum.

Amended Section 1 of Article V of the Constitution providing that "the Legislature may prescribe the compensation of the Justices and Judges of the several courts," does not forbid a classification of Judicial Circuits by the population of a county therein, for the purpose of fixing the salaries of the Circuit Judges. As the Constitution does not define what are county purposes for which a county may be authorized to levy taxes under Section 5 of Article IX of the Constitution, and as Senate Bill No. 517, Acts of

1921, enacts that the payments therein required to be made on the salaries of Circuit Judges in classified counties are for county purposes, such statutory provisions should not be nullified when, as here, it is not shown that such payments cannot in fact serve any county purpose whatever, or that the classification violates any provision of organic law, or is merely arbitrary.

Section 42, Article V, Constitution, requires the salary of one Circuit Judge to be paid by the county, though the Circuit Judge is a State officer; and the statute expressly provides that the payments required to be made to supplement the salaries of Circuit Judges in classified circuits are "for county purposes."

Under Section 11 of Article V of the Constitution and Section 5199 (3346) C. G. L.; the Circuit Judges are authorized to substitute for County Judges in Probate matters, etc., thereby serving in lieu of a county officer. State v. Horne, 85 Fla. 309, 99 So. 330. Under Section 6, Article VIII and the statutes, the county tax assessors and tax collectors are paid by the counties and by the State for services rendered. Salaries of Judges of the Civil and Criminal Courts of Record are paid by the counties respectively, and such courts have jurisdiction which in other counties is in the Circuit Court.

The provision in Section 42, Article V, providing for another Circuit Judge in Duval County, and that such Judge "shall receive the same salary and allowances for expenses as other Circuit Judges, but the same shall be paid by the County of Duval," does not forbid a classification of Judicial Circuits in which contributions to the salaries of Circuit Judges in the class shall be made by the counties therein. In large counties Circuit Judges have many more duties to perform which serve county purposes,

than do the Circuit Judges in the small counties, and the classification made is not unreasonable or arbitrary. As to what may be county purposes, see Stockton v. Powell, 29 Fla. 1, 10 So. 688, Bd. of Com'rs v. Bd. of Pilot Com'rs, 52 Fla. 197, 42 So. 697, 120 Am. St. Rep. 196; Jordan v. Duval County, 68 Fla. 48, 66 So. 298.

The Constitution uses the population of counties, cities and circuits as a basis for classifications for governmental purposes. See Sections 43 and 45, Article V; Section 24, Article III, as amended in 1934, Section 3, Article VII, as amended in 1924.

Legislative classifications according to the population of counties have been sustained where the subject regulated may be so classified and the classifications as made are reasonable and not merely arbitrary. See State, *ex rel,* v. Daniel, 87 Fla. 270, 99 So. 804; Sparkman v. County Budget Com., 103 Fla. 242, 137 So. 809.

Neither Chapter 15859, Acts of 1933, nor the General Appropriation Act of 1933 repealed Senate Bill No. 517, Acts of 1921, since the subjects covered by Chapters 15859, and the General Appropriation Act of 1933 do not include the subject matter of the Act of 1921, and there was no express repeal of the Act of 1921 in either such Acts.

The Act of 1921 is not inconsistent with other statutory provisions or with the organic provision that "the Legislature may prescribe the compensation of the Justices and Judges of the several courts," contained in amended Section 1, Article V. The classification of the statute does not violate other provisions of the Constitution as to the salaries of Circuit Judges.

The provisions in amended Section 8 and in Section 9, Article V, Constitution, that "the salary of each Circuit Judge shall be" a stated amount, is superseded by the pro-

visions of amended Section 1 of Article V, Constitution, adopted in 1914, that "the Legislature may prescribe the compensation of the Justices and Judges of the several courts."

The provisions in Sections 42 and 43, Article V, that the additional Circuit Judges therein provided for "shall receive the same salary and allowances for expenses as other Circuit Judges," do not prevent proper statutory classification of counties and circuits for the purpose of prescribing the compensation of Judges of the Circuit Court under Section 1, Article V, Constitution, as amended in 1914.

Chapter 15859, Acts of 1933, fixing the salary of each Circuit Judge at $5,000.00 per annum was approved May 31, 1933, to take effect July 1, 1933.

The county budget statute requires a copy of the completed budget to be sent to the Comptroller on or before the first day of June. This made it impossible for the budget for 1933-1934 to include an item to supplement the salaries of the Judges of the Circuit Court under the Act of 1921 after the salaries were reduced below $6,000.00 each per annum by Chapter 15859, which was approved May 31, to take effect July 1, 1933.

Chapter 15859 relates to salaries to be paid by the State and its repealing clause does not affect the statute known as Senate Bill No. 517, Acts of 1921, since the latter Act relates to a different subject matter and is not inconsistent with Chapter 15859. The latter Act refers to salaries paid by the State, while the former relates to added salaries paid by the counties. The salary of the Circuit Judge provided for by Section 42, Article V, Constitution, is paid by the county; but the organic section provides that such Circuit Judge shall receive the same salary as other Circuit Judges.

. This, however, does not prohibit proper classifications of counties and Judicial Circuits for supplemental salaries to be paid by the counties to Circuit Judges; and the classification made by the Act of 1921 is appropriate and not arbitrary. This is so because amended Section 1 of Article V makes the salaries subject to legislative enactment; and appropriate statutory classifications in fixing such salaries are not expressly or impliedly forbidden by the Constitution.

Under proper classification, as here, the payment of supplemental amounts by the counties is declared by the statute to be for a county purpose, and the Constitution does not define county purposes or regulate the subject of such salaries; but Section 1, Article V, as amended in 1914, authorizes the Legislature to prescribe the compensation of Justices and Judges; therefore the Act of 1921, does not violate Section 5 of Article IX of the Constitution relating to taxation for county purposes, or the provisions of Sections 42 and 43 of Article V, relating to the salaries of Circuit Judges.

. The Comptroller was justified in refusing to approve the transfer of county funds under the budget statute upon the theory that it was not clear that the Act known as Senate Bill No. 517, constitutionally required the payment to be made by the county, since the legal effect of that Act had not been authoritatively determined.

Now that the legality and applicability of the Act of 1921 have been adjudicated, the duty of the Comptroller to approve the transfer of county funds under the county budget statutes for the payment of a claim *required* by the Act of 1921 to be made, is clear and positive no question of the amount and propriety of the claim or of funds for the payment being involved. Where a valid statute requires a

stated payment to be made, administrative discretion is excluded. See State, *ex rel.* Weeks v. Gamble, 13 Fla. 9.

In State, *ex rel.* Russel v. Barnes, 25 Fla. 75, 5 So. 698, and State, *ex rel.* Mitchell v. Bloxham, 26 Fla. 407, 7 So. 873, the Comptroller correctly interpreted the statute under which payments were demanded.

In State, *ex rel.* Moody v. Barnes, Comptroller, 25 Fla. 298, 5 So. 722, the judgment and discretion of the Comptroller were exercised not as to the legal effect of a statute, but as to the sufficiency of an official bond, the approval of which was committed to the Comptroller by the Constitution.

The motion to quash the alternative writ is overruled.

TERRELL, BROWN and DAVIS, J. J., concur.

ELLIS and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—I find myself unable to agree with the majority opinion in this case. My dissent is based upon two grounds. The first is, I think that the Constitution contemplated that the salaries and duties of all Circuit Judges should be uniform. The Constitution contemplates the exchange of circuits between Circuit Judges when directed by the Governor. The Circuit Judge in the smallest circuit of the State is subject to be called at any time to serve for such period of time as the Governor may designate in the largest circuit of the State. Cases pending in the largest county in the State may be transferred for disposition to a smaller county.

Section 43, Article V of the Constitution which was adopted at the general election in 1922 amongst other things provides:

"The Legislature may from time to time and as the business of any circuit requires, provide for the appointment of one or more additional Circuit Judges for such circuit.

Each such additional Circuit Judge shall be appointed by the Governor and confirmed by the Senate, and hold office for six years, and shall receive the same salary and allowance for expenses as other Circuit Judges. He shall have all the powers and perform all the duties that are or may be provided or prescribed by the Constitution or by statute for Circuit Judges, and all statutes concerning Circuit Judges shall apply to him."

Every Circuit Judge is subject to call to aid the Supreme Court. Therefore, by the Constitution provision has been made for the equalization of the work falling upon Judges of the Circuit Courts.

For these reasons, I consider what is known as Senate Bill No. 517, Acts 1921, invalid because there appears to be no reasonable basis for the classification attempted to be made therein.

If the Legislature may fix a salary for Circuit Judges in circuits in which there is a county having more than 100,000 population at a higher figure than the salary of Circuit Judges in circuits which do not include a county having as much as 100,000 population, then by the same token the Legislature may fix the salaries of Circuit Judges in circuits not embracing a county of more than 100,000 population but having a greater total population than that circuit which does embrace one county having more than 100,000 population, at a less amount than is authorized to be paid the judges in such smaller populated circuit.

If reasonable basis could be found for fixing the salary of Circuit Judges on a population classification, certainly the population of the circuit should be the basis of the classification and not the population of a county within the circuit. But, I do not concede that even that sort of a

classification would be valid as a basis for salaries of Circuit Judges.

If Senate Bill 517, Acts of 1921, is to be held valid, it must be upon the thory that it is a general law and if it is a general law it was repealed by Chapter 15859, Acts of 1933, and, therefore, the Comptroller properly declined to approve the transfer of funds for the payment of the additional salary provided by Senate Bill No. 517.

Ellis, J., concurs. ·